## Opinion of the Justices to the House of Representatives.

*Constitutional Law*, Appropriation of money, Opinion of the Justices, General Court, Governor. *General Court. Governor.*

The legal effect of a message of the Governor wherein he undertook to approve an item in a general appropriation bill but to disapprove certain restrictions placed by the General Court upon the expenditure of the sum appropriated by the item is an important question of law upon which the opinions of the justices can be required by the House of Representatives under c. 3, art. 2, of the Constitution.

In the opinion of the justices, a message of the Governor wherein he attempted to approve a certain item in a general appropriation bill but to disapprove a restriction placed therein by the General Court upon the amounts to be expended respectively for certain purposes covered by the general title of the item, was not within the powers granted to him under § 5 of art. 63 of the Amendments to the Constitution, or of any other power granted to him by the Constitution with reference to legislation.

The General Court has power under § 3 of art. 63 of the Amendments to the Constitution to place a restriction upon how much of the total sum specified in an item included in a general appropriation bill in conformity to G. L. (Ter. Ed.) c. 6, § 8, shall be spent for certain purposes within the general title of the item.

Upon the return of a general appropriation bill to the House of Representatives with a message from the Governor which was a general approval of the bill but also was an ineffectual attempt to disapprove a restriction placed by the General Court upon the ways in which the sum specified in a certain item might be spent, a question, whether the restriction should pass notwithstanding the objection of the Governor, was not properly before the House; and the bill had become law, either because the disapproval of the restriction was a nullity and the general approval gave the bill validity, or because, the time for veto having expired, the entire bill became law for failure to veto.

On June 4, 1936, the House of Representatives adopted the following order:

Whereas, The current general appropriation bill (House, No. 1740, amended) was laid before His Excellency the Governor for his revisal on May 26, 1936 (see Senate Journal of that date, a copy of which is herewith submitted); and Whereas, His Excellency the Governor, on June 2, 1936, returned said bill to the House of Representatives, in which it originated, with a message (see House, No.

1872, a copy of which is submitted herewith), whereby he apparently seeks to exercise the powers granted to him under Section 5 of Article LXIII of the Amendments to the Constitution; and

WHEREAS, When this matter came up for action in the House of Representatives (see House Calendar of Wednesday, June 3, 1936, a copy of which is submitted herewith) a point of order was raised that neither the bill (House, No. 1740, amended) nor any part thereof, nor the message of His Excellency the Governor (House, No. 1872), was properly before the House for action thereon, for the reason that the Governor had failed to exercise properly, in relation to the matters contained therein, any power given to him by the Constitution of the Commonwealth with reference to legislation, and said point of order is now pending before the House for action; and

WHEREAS, Earlier in this session His Excellency the Governor was confronted with a similar question as to the exercise of his constitutional powers with respect to legislation when a certain bill (House, No. 1682) was laid before him for his revisal, and in that case said bill was returned by him to the House of Representatives, where it originated, with a message (House, No. 1688) in which he recommended an amendment to said bill under Article LVI of the Amendments to the Constitution (a copy of each of said documents being submitted herewith); and

WHEREAS, Grave constitutional questions are involved in the determination of the aforesaid point of order; now, therefore, be it

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the House of Representatives upon the following important questions of law:

(1) Is the action of His Excellency the Governor, as indicated in said message, a proper exercise of the powers granted to him under Section 5 of said Article LXIII of the Amendments to the Constitution of the Commonwealth?

(2) Is the action of His Excellency the Governor, as so indicated, a proper exercise of any power granted to him by said Constitution with reference to legislation?

(3) Has Item 101 of said House Bill No. 1740 become law under the provisions of the said Constitution?

(4) Upon the facts hereinbefore set forth, was the question appearing at the end of Calendar item No. 1325 of the said House Calendar of Wednesday, June 3, 1936, "Shall that part of the item pass, notwithstanding the objections of His Excellency the Governor?" properly before the House of Representatives, when said point of order was raised?

The order was transmitted to the Justices on June 5, 1936, and on June 11, 1936, they returned the following answers:

To The Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to questions in an order adopted on June 4, 1936, and received on June 5, 1936, copy whereof is hereto annexed. These questions relate to the appropriate procedure concerning a message from His Excellency the Governor, wherein he undertook to approve a part and disapprove a part of one item in the general appropriation bill. The rest of that bill with this single exception has been approved.

The Honorable the House of Representatives has no occasion to ask the opinion of the Justices of the Supreme Judicial Court as to the power of the Governor except as the exercise of that power has a bearing on a matter pending before it. The House has pending before it for consideration the message from His Excellency the Governor purporting to veto a part of one item in the general appropriation bill. Consequently it is important for the House to know the legal nature and effect of that message. The questions in the order must be answered. *Opinion of the Justices*, 135 Mass. 594.

These facts appear from the order and papers transmitted

with it: His Excellency the Governor submitted to the General Court during the current year a budget which contained this item: "For payment of extraordinary expenses and for transfers made to cover deficiencies, with the approval of the governor and council, a sum not exceeding $100,000." Touching that item the general appropriation bill based on that budget as enacted by the General Court (as shown on the House calendar for June 3, 1936, and transmitted with the order) contained this: "101 For payment of extraordinary expenses and certain other expenditures as authorized by section eight of chapter six of the General Laws, as appearing in the Tercentenary Edition thereof, [subject, however, to the condition that not less than fifty thousand dollars of the sum appropriated by this item shall be reserved for use in carrying out the provisions of sections twenty-five to thirty-three, inclusive, of chapter thirty-three of the General Laws, as so appearing, not less than ten thousand dollars thereof shall be reserved for use for the entertainment of the President of the United States and other distinguished guests while visiting or passing through the commonwealth, and not more than five thousand dollars thereof, in the aggregate, shall be transferred to items ninety-five, ninety-seven, ninety-eight and ninety-nine,] a sum not exceeding one hundred thousand dollars (1935 appropriation, $100,000) $100,000 00." This matter came up for action in the House of Representatives in this form: "So much of this item as is enclosed in brackets has been disapproved by the Governor, — see House, No. 1872. Question: *Shall that part of the item pass, notwithstanding the objections of His Excellency the Governor?*" The point of order was thereupon raised that His Excellency the Governor had by his message failed to exercise in relation to the matters therein contained any power vested in him by the Constitution respecting legislation.

The qualified veto power conferred upon the Governor by c. 1, § 1, art. 2, of the Constitution can be exercised by the Governor as to a bill or resolve as a whole. He is obliged to act upon the proposed legislation as a unit and cannot ap-

prove in part and disapprove in part. Art. 56 of the Amendments to the Constitution confers upon the Governor the right, within five days after a bill or resolve has been laid before him, to return it to the branch of the General Court in which it originated, with a recommendation that any specified amendment or amendments be made. That article, however, does not enable the Governor to approve a part of a bill or resolve and disapprove the remainder. It confers power to suggest an amendment or amendments and return the entire bill or resolve. These two provisions of the Constitution have no bearing upon the questions here to be considered.

Different powers as to a qualified veto are conferred upon the Governor by art. 63 of the Amendments to the Constitution with reference to the budget and general and special appropriation bills. By § 5 of said art. 63, "The governor may disapprove or reduce items or parts of items in any bill appropriating money. So much of such bill as he approves shall upon his signing the same become law. As to each item disapproved or reduced, he shall transmit to the house in which the bill originated his reason for such disapproval or reduction, and the procedure shall then be the same as in the case of a bill disapproved as a whole." The fact that this section relates solely to appropriation bills, in conjunction with the word "reduce," indicates clearly that the expression "items or parts of items" refers to separable fiscal units. They are appropriations of sums of money. Power is conferred upon the Governor to reduce a sum of money appropriated, or to disapprove the appropriation entirely. No power is conferred to change the terms of an appropriation except by reducing the amount thereof. Words or phrases are not "items or parts of items." This principle applies to the condition attached to the appropriation now in question. That condition is not an item or a part of an item. The veto power conferred upon the Governor was designed to enable him to recommend the striking out or reduction of any item or part of an item. In the present instance His Excellency the Governor did not undertake to veto the appropriation of $100,000 made by item 101, or any part of it,

nor to reduce that amount or any part of it apportioned to a specific purpose. He sought, rather, as shown by his message, to enlarge the appropriation made by the General Court by throwing the $100,000 into a common fund to be used for any one of several different purposes. We are of opinion that the power conferred upon him by said art. 63 does not extend to the removal of restrictions imposed upon the use of the items appropriated. It is plain that no other provision of the Constitution confers power upon the Governor to disapprove the condition attached to the item in question.

The result is that the disapproval of that condition was a nullity. That is the only disapproval expressed in the message.

The General Court dealt with the item in the budget which was submitted by His Excellency the Governor. Its action was embodied in item 101 of the general appropriation bill already quoted. Its power in this respect is stated in § 3 of said art. 63 in these words: "The general court may increase, decrease, add or omit items in the budget." In substance and effect the General Court omitted the item in the precise form submitted and added a new item under the same heading as embodied in the bill. The total amount was the same as submitted in the budget. But the subdivision of the item as enacted is materially different from that originally submitted. The power conferred upon the General Court under § 3 of said art. 63 in our opinion includes the power exercised with reference to item 101. Whether such power ought to be vested in the General Court was the subject of considerable debate in the Constitutional Convention. An underlying feature of our form of government is that the power to raise money, levy taxes and control the expenditure of public funds is vested in the General Court. Constitution, Part the First, art. 23; Part the Second, c. 1, § 1, art. 4; § 3, art. 7. This must be kept in mind in considering questions of public revenue and expenditures. In view of this general principle of our government, it would require words in the Constitution of unequivocal meaning to prevent the General Court from attaching conditions to the

expenditure of moneys appropriated by it. There are no such restrictive words in said art. 63. The arrangement of the budget as submitted under items does not prevent the General Court from lawfully accomplishing what was here done with respect to item 101.

The provisions of G. L. (Ter. Ed.) c. 6, § 8, concerning the appropriation of an amount not exceeding $100,000 each year for the purposes specified in item 101 did not bar the action taken by the General Court respecting that item in the general appropriation bill. Those provisions do not prevent the General Court from making a division of the appropriation of the $100,000 among the several purposes there mentioned. It does not make mandatory the appropriation of a single lump sum. A statute of this nature cannot tie the hands of the General Court so as to prevent it from enacting a statute dealing with the appropriation of public funds. It is of no higher authority than the appropriation bill if and when enacted into law.

The question then arises whether item 101 of the general appropriation bill has become law with the condition attached. Since the disapproval of the condition was without effect, the general approval of the act gave it validity. If, however, the approval be treated as a whole and therefore conditional and a nullity, the time for veto has expired and the entire bill takes effect because of the failure of His Excellency the Governor to return the bill with a veto. In either event item 101 has become law.

It follows that the question set forth in question (4) of the order was not properly before the Honorable the House of Representatives when the point of order was raised.

The answer is "No" to questions (1), (2) and (4), and "Yes" to question (3).

ARTHUR P. RUGG.
JOHN C. CROSBY.
EDWARD P. PIERCE.
FRED T. FIELD.
CHARLES H. DONAHUE.
HENRY T. LUMMUS.
STANLEY E. QUA.