# OPINIONS OF THE JUSTICES

OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law*, General Court, Governor, Appropriation of money. *General Court. Governor. Words*, "Item."

The Governor has the authority under art. 63, § 5, of the Amendments to the Massachusetts Constitution to disapprove any separable provision contained in a general appropriation bill. [821-827]

On September 2, 1981, the Justices submitted the following answer to a question propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit their answer to the question set forth in an order adopted by the House of Representatives on July 21, 1981, and transmitted to this court on July 23, 1981. The order recites the pendency before the House of Representatives of a message from his Excellency the Governor disapproving, disapproving in part, and reducing certain items in House Bill No. 6969, entitled "An Act making appropriations for the fiscal year nineteen hundred and eighty-two, for the maintenance of the departments, boards, commissions, institutions and certain activities of the commonwealth, for interest, sinking fund and serial bond requirements and for certain permanent improvements" pursuant to art. 63, § 5, of the Amendments to the Massachusetts Constitution. A copy of House Bill No. 6969 as well as a copy of the Governor's message was transmitted with the order.

House Bill No. 6969 is the general appropriation act for fiscal year 1982. The order enumerates seventy-seven sections of the bill which were disapproved by the Governor

and which are characterized as "general legislation" in the order. The order recites the intention of the House of Representatives to consider for passage only those sections "which the governor had a constitutional right to disapprove or reduce." The order further recites that "[g]rave doubt exists as to the constitutional right of the governor to disapprove any of the sections hereinbefore mentioned."

The question is:

"Can the governor, acting pursuant to said Section 5 of Article 63 of the Amendments to the Constitution, disapprove any section of House Bill No. 6969 which is not an 'item or part of an item' as defined in the Opinion of the Justices 294 Mass. 616, 620-621?"[1]

The Justices have discussed the history and purpose of art. 63 in *Opinion of the Justices*, 349 Mass. 804, 805-807 (1965). *Opinion of the Justices*, 373 Mass. 911, 912-913 (1977), is also instructive. The governing provision here is § 5, which states: "The governor may disapprove or reduce items or parts of items in any bill appropriating money. So much of such bill as he approves shall upon his signing the same become law." In *Opinion of the Justices*, 294 Mass.

---

[1] We invited the submission of briefs and received briefs on behalf of the Governor, and on behalf of the Secretary of Administration and Finance, the Attorney General, the Boston Bar Association and the Associated Industries of Massachusetts supporting a "Yes" answer; and briefs on behalf of the counsel to the House of Representatives and on behalf of certain organizations and classes of individuals interested in three sections vetoed by the Governor supporting a "No" answer. A brief submitted by Blue Cross of Massachusetts, Inc., with Blue Shield of Massachusetts, Inc., and Associated Industries of Massachusetts, Inc., supported the position taken by the Attorney General and the Boston Bar Association, but argued alternatively that the court should respond that the general legislation disapproved by the Governor was improperly appended to the general appropriation bill in the first instance. The Massachusetts Taxpayers Foundation, Inc., submitted a brief in which it also advocated this alternative position. As noted in the text of the opinion, we do not reach this question.

616, 620-621 (1936), the Justices construed "items or parts of items" to refer to "separable fiscal units." "No power is conferred to change the terms of an appropriation except by reducing the amount thereof. Words or phrases are not 'items or parts of items.' . . . We are of opinion that the power conferred upon [the Governor] by said art. 63 does not extend to the removal of restrictions imposed upon the use of the items appropriated."

We assume for purposes of this opinion, without accepting the characterization of the order from the House of Representatives of all seventy-seven sections as "general legislation," that the vetoed sections at issue do not meet this definition of "item." We are not, however, restricted in our answer by that earlier definition. The Justices defined "items" as "separable fiscal units" so as to circumscribe the Governor's power to excise limitations on an appropriation and thereby enlarge his executive spending authority. The Justices reasoned that a Governor may not eliminate a restriction on an item so as to enact the item free of the restriction, because such a change in the terms of an appropriation would be an invalid act of gubernatorial lawmaking. *Id.* See *Opinion of the Justices*, 302 Mass. 605, 612-613 (1939); *Opinion of the Justices*, 375 Mass. 827, 832-836 (1978). A determination of the proper limits of legislative or executive powers in attaching or vetoing separable general legislation "riders" to an appropriation bill was not before the Justices in *Opinion of the Justices*, 294 Mass. 616 (1936). Indeed, the Justices later expressly reserved the question whether the Governor could disapprove general legislation attached as a rider to an appropriation bill in *Opinion of the Justices*, 373 Mass. 911, 915 (1977).

Accordingly, it is clear that to recognize that the Governor has vetoed sections attached to the current general appropriation bill that do not meet the definition of "item" previously set forth, is to begin our inquiry, not to end it. Resolution of the broader question, implicit in the question asked of us, requires us to examine the constitutional framework supporting the Governor's selective veto power.

Section 5 is but one part of art. 63, a comprehensive constitutional provision dealing with the budgetary process of the Commonwealth. Article 63, § 2, vests the responsibility for preparing a budget in the Governor and specifies how that document is to be submitted to the General Court. Article 63, § 3, delineates the Legislature's responsibilities: "All appropriations based upon the budget to be paid from taxes or revenues shall be incorporated in a single bill which shall be called the general appropriation bill. The general court may increase, decrease, add or omit *items* in the budget" (emphasis supplied).

We must construe a constitutional amendment as an harmonious whole, giving words and phrases in different places in the amendment the same meaning unless used in manifestly different senses. *Raymer* v. *Tax Comm'r*, 239 Mass. 410, 412 (1921). Applying this fundamental standard of construction, we observe that the language of art. 63, §§ 3 and 5, supports the conclusion that the authority of the Governor to disapprove "items" in an appropriation measure is coextensive with the authority of the General Court to insert "items" in such a bill. Article 63 was enacted by the Constitutional Convention of 1917-1918, and adopted by the people. Thus, its words "should be interpreted in the sense most obvious to the common intelligence, because a matter proposed for public adoption must be understood by all entitled to vote." *Lincoln* v. *Secretary of the Commonwealth*, 326 Mass. 313, 317 (1950).

Furthermore we must, if possible, construe the amendment so as to accomplish a reasonable result and to achieve its dominating purpose. *Lincoln* v. *Secretary of the Commonwealth*, 326 Mass. 313, 317 (1950). The Debates in the Constitutional Convention support the conclusion that "item" in § 3 is equivalent to "item" in § 5. An examination of the Debates in the Constitutional Convention of 1917 reveals that the framers of art. 63 were agreed on at least three fundamental points. First, they intended to give the executive a central role in the State budgetary process; second, they recognized that appropriation bills are by their

nature unique; and third, they agreed that the unitary executive veto granted in Part II, c. 1, § 1, art. 2, of the Constitution could not provide an effective mechanism for balancing proper legislative and executive powers with respect to the State budget. See generally 3 Debates in the Massachusetts Constitutional Convention 1917-1918, at 1141-1216 (1920). Without the item veto, the Governor might "be obliged to veto an entire bill merely on account of one item which does not meet his approval." Debates at 1146. "The one thing in this budget proposal for which an amendment to the Constitution is absolutely necessary is the power given in the last sentence to the Governor to approve or disapprove of the separate items in the budget. That is absolutely essential." Debates at 1153. "We want to prevent waste, we want to prevent log-rolling, the special bills, the tit-for-tat kind of work in the Legislature, and we want to center responsibility." Debates at 1165.

Moreover, while other points were debated at length, no opposition was voiced either to an "executive budget" or to the concomitant extension of the Governor's veto power. In fact, much of the debate centered on the question whether the Legislature should be allowed to increase appropriations proposed by the Governor, or whether the legislative power should be limited to reducing or omitting items in the Governor's proposal. See generally Debates at 1156-1168. The majority of the committee which framed the draft amendment were clearly of the view that the expanded executive veto power would balance the Legislature's prerogative to increase items in the Governor's proposal. In the words of Mr. Parkman, who introduced the Amendment, "As to the suggestion about vetoing an increase in items, the committee considered that the Governor could disapprove of any item or part of an item, which would cover the question." Id. at 1169.

Hence, a narrow reading of the Governor's authority to disapprove items under § 5 would be unfaithful to the intention of the framers, and would upset the careful balance of powers set forth in § 3 and § 5. Accordingly, we con-

clude that for purposes of his veto power under § 5, the Governor may treat as an "item" any separable provision attached to the general appropriation bill.

As we noted earlier, the language and history of art. 63 supports this result. Considerations of public policy also tend to fortify our answer. Cf. *Opinion of the Justices*, 362 Mass. 895, 905 (1972). The Justices disapproved a device for circumventing the item veto power in the *Opinion of the Justices*, 373 Mass. 911, 914-915 (1977). If the Governor did not have power coextensive with that of the General Court under art. 63, general legislation included in a general appropriation bill would be rendered substantially veto-proof. "The very vice of 'log-rolling' against which the item-veto is a safeguard would be reintroduced." *Id.* at 915. Such an encroachment on the executive's prerogatives would be a violation of the concept of separation of powers expressed in art. 30 of the Declaration of Rights. See *Opinion of the Justices*, 369 Mass. 990, 992 (1976); *Opinion of the Justices*, 208 Mass. 610, 613 (1911). We note that the inclusion of such a section raises the question whether such a section would be insulated from review by the people under the referendum provision of art. 48. See art. 48, The Referendum, III, Referendum Petitions, § 2.

We have reviewed cases from other jurisdictions as an additional aid to the construction of art. 63. Approximately forty-two other States have item veto provisions in their Constitutions. See Note, Item Veto Amendment to the Iowa Constitution, 18 Drake L. Rev. 245 (1969); Beckman, The Item Veto Power of the Executive, 31 Temple L.Q. 27 (1957). Several cases, construing item veto provisions somewhat similar to that found in the Massachusetts Constitution, have based a decision finding a particular exercise of the Governor's partial veto power to be invalid on a narrow definition of the word "item". See, e.g., *Bengzon* v. *Secretary of Justice*, 299 U.S. 410 (1937); *Black & White Taxicab Co.* v. *Standard Oil Co.*, 25 Ariz. 381 (1923); *Patterson* v. *Dempsey*, 152 Conn. 431 (1965); *Opinion of the Justices*, 306 A.2d 720 (Del. 1973); *Cenarrusa* v. *Andrus*, 99 Idaho

404 (1978); *Jessen Assocs., Inc.* v. *Bullock*, 531 S.W.2d 593 (Tex. 1976). If we were to examine § 5 in isolation we might find their reasoning to be persuasive. Rather, we respond simply that the Governor's powers are coextensive with the Legislature's purported exercise of its powers under art. 63. To maintain a constitutional balance and preserve the separation of powers, the gubernatorial partial veto power must extend to any separable provisions contained in a general appropriation bill. We need not and do not answer the question whether such separable provisions may properly be included in a budget bill in the first instance.

Several other States have broadly construed "item" or found other language to support the extension of the limited veto power to non-item portions of an appropriations bill. While the language of the constitutional provisions discussed in these cases may differ from the language of art. 63, § 5, the cases demonstrate a recognition that legislative control should not be exercised in such a manner as to encumber a general appropriations bill with veto-proof "log-rolling" measures (special interest provisions which could not succeed if separately enacted) or riders (substantive pieces of legislation incorporated in a bill to ensure passage without veto). See, e.g., *State ex rel. Turner* v. *Iowa State Highway Comm'n*, 186 N.W.2d 141 (Iowa 1971); *State ex rel. Sego* v. *Kirkpatrick*, 86 N.M. 359 (1974); *State ex rel. Brown* v. *Ferguson*, 32 Ohio St. 2d 245 (1972); *State ex rel. Sundbey* v. *Adamany*, 71 Wis. 2d 118 (1976). We note with particular approval *Henry* v. *Edwards*, 346 So. 2d 153 (La. 1977), holding that the Legislature may not immunize legislation from executive veto, saying: "We are no more willing to allow the legislature to use its appropriation power to infringe on the Governor's constitutional right to veto matters of substantive legislation then we were to allow the Governor to encroach on the constitutional powers of the legislature. In order to avoid this result, we hold that, when the legislature inserts inappropriate provisions in a general appropriation bill, such provisions must be treated as 'items' for purposes of the Governor's item veto power over general appropriation bills." *Id.* at 158.

However useful the discussions of a Governor's item veto power found in cases from other jurisdictions may be, none of the cases addresses a provision setting forth the balance found between §§ 3 and 5 of art. 63. Therefore we prefer to rely on the history and language of our own amendment in formulating our answer.

With the explanation and qualifications set forth above, we answer in the affirmative the question propounded to us by the House of Representatives.

The foregoing answer and opinion are submitted by the Chief Justice and the Associate Justices, subscribing hereto on the second day of September, 1981.

> EDWARD F. HENNESSEY
> HERBERT P. WILKINS
> PAUL J. LIACOS
> RUTH I. ABRAMS
> JOSEPH R. NOLAN
> NEIL L. LYNCH