OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law*, General Court, Governor, Appropriation of money. *General Court. Governor.*

Certain provisions in line items of a general appropriation bill transferring to the Administrative Justice of the Boston Municipal Court Department the title and duties of the Administrative Justice of the Housing Court Department, requiring reports to the Legislature by the Commissioner of Administration as to the estimated cost of offers made by the Commonwealth during collective bargaining negotiations, and prescribing various fiscal measures to be taken by the Governor were separable provisions of general legislation, not restrictions or conditions on the expenditure of appropriations, and thus were lawfully disapproved by the Governor acting pursuant to § 5 of art. 63 of the Amendments to the Massachusetts Constitution. [832]

Where a line item of a general appropriation bill making an appropriation for various social services contained language specifying the respective amounts to be expended for three named programs, the restrictive language was inseparable from the line item concerned, and the Governor, acting pursuant to § 5 of art. 63 of the Amendments to the Massachusetts Constitution, was limited to disapproving or reducing the entire item with the restrictive language. [836-838]

On November 5, 1981, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court respectfully submit their answers to the questions set forth in an order adopted by the House of Representatives on September 16, 1981, and transmitted to this court on September 17, 1981. The order recites that there is pending before the House of Representatives a message from the Governor, disapproving in part, and reducing certain items in House Bill No. 6969,

entitled "An Act making appropriations for the fiscal year nineteen hundred and eighty-two, for the maintenance of the departments, boards, commissions, institutions and certain activities of the commonwealth, for interest, sinking fund and serial bond requirements and for certain permanent improvements," pursuant to art. 63, § 5, of the Amendments to the Massachusetts Constitution. Copies of the Governor's message and House Bill No. 6969 were transmitted with the order.

House Bill No. 6969 is the general appropriation bill for fiscal year 1982. The order states that the Governor "purported to disapprove, in Section 2 of said House bill, certain restrictive words and phrases relative to" six specified items. The General Court intends to consider for passage, notwithstanding the Governor's objections, certain items which the Governor had the constitutional right to disapprove or reduce. The order concludes that "[g]rave doubt exists as to the constitutional right of the governor to disapprove of certain restrictive words and phrases in said items hereinbefore mentioned without disapproving or reducing said items . . . ."

The questions are:

"1. Is it constitutionally competent under the provisions of Section 5 of Article LXIII of the Amendments to the Constitution for the governor to disapprove certain restrictive words and phrases imposed upon the use of said appropriation item 0335-0001 without disapproving or reducing the entire item?

"2. Is it constitutionally competent under the provisions of Section 5 of Article LXIII of the Amendments to the Constitution for the governor to disapprove certain restrictive words and phrases imposed upon the use of said appropriation item 0336-0100 without disapproving or reducing the entire item?

"3. Is it constitutionally competent under the provisions of Section 5 of Article LXIII of the Amendments to the Constitution for the governor to disapprove cer-

tain restrictive words and phrases imposed upon the use of said appropriation item 0336-0200 without disapproving or reducing the entire item?

"4. Is it constitutionally competent under the provisions of Section 5 of Article LXIII of the Amendments to the Constitution for the governor to disapprove certain restrictive words and phrases imposed upon the use of said appropriation item 1101-2100 without disapproving or reducing the entire item?

"5. Is it constitutionally competent under the provisions of Section 5 of Article LXIII of the Amendments to the Constitution for the governor to disapprove certain restrictive words and phrases imposed upon the use of said appropriation item 1201-0100 without disapproving or reducing the entire item?

"6. Is it constitutionally competent under the provisions of Section 5 of Article LXIII of the Amendments to the Constitution for the governor to disapprove certain restrictive words and phrases imposed upon the use of said appropriation item 4800-0010 without disapproving or reducing the entire item?"[1]

Underlying the questions is the general issue of the scope of the Governor's authority under § 5 of art. 63 to disapprove language that appears in items in a general appropriation bill. Section 5 provides, in part, that the Governor "may disapprove or reduce items or parts of items in any bill appropriating money." Recently, in response to another question submitted by the House with respect to House Bill No.

---

[1] We invited interested persons to submit briefs. In response, the Governor, the Commissioner of Administration (alternatively, in the statute, the Secretary of Administration), and the Boston Bar Association filed briefs urging the Justices to answer the questions in the affirmative. Counsel to the Senate and the Massachusetts Association of Day Care Agencies, Inc., filed briefs arguing that negative answers should be given. The Massachusetts Taxpayers Foundation, Inc., submitted a memorandum supporting affirmative answers to questions 1 through 5 and a negative answer to question 6.

6969,[2] the Justices analyzed the language in § 5, as well as § 3 (authorizing the Legislature to "increase, decrease, add or omit items in the budget") in light of the history and purpose of art. 63 and concluded that "for purposes of his veto power under § 5, the Governor may treat as an 'item' any separable provision attached to the general appropriation bill." *Opinion of the Justices, ante* 820, 825 (1981). There the Justices were considering the veto power with respect to provisions in separate (so-called "outside") sections of the general appropriation bill.

Shortly after the Justices issued that opinion the court was called upon to answer the question whether the Governor had authority under § 5 of art. 63 to disapprove a provision that appeared, not in a separate section of the general appropriation bill, but in an item. The court concluded that the Governor could disapprove the provision (without disapproving or reducing the entire item) only if it was a separable provision and not a restriction or condition. Noting that this conclusion accorded with what appeared to be the view of the majority of the States which permit partial vetoes, the court stated that "where a provision of an appropriation bill does not direct the way an appropriation is to be used or qualify the appropriation, the provision is separable and susceptible to an item veto" (footnote omitted). *Attorney Gen. v. Administrative Justice of the Boston Municipal Court Dep't of the Trial Court, ante* 511, 515 (1981). Expressing the rule in other words, the court said, "[T]o determine whether the provisions were validly disapproved by the Governor, we must consider whether their deletion altered the purposes of the appropriations or eliminated valid restrictions or conditions." *Id.* at 516.

In applying these rules to the questions, we have in mind that the appropriating power is within the province of the

---

[2] The question was, "Can the governor, acting pursuant to said Section 5 of Article 63 of the Amendments to the Constitution, disapprove any section of House Bill No. 6969 which is not an 'item or part of an item' as defined in the *Opinion of the Justices* 294 Mass. 616, 620-621?" Subject to qualifications and explanation in the opinion, the Justices answered in the affirmative.

Legislature. However, if through the appropriation process, the Legislature were able to compel the Governor either to accept general legislation or to risk forfeiture of appropriations for a department of government, the careful balance of powers struck in art. 63 would be destroyed, and the fundamental principle of separation of powers, preserved in art. 30 of the Declaration of Rights, would be substantially undermined. *Opinion of the Justices, ante* 820, 825 (1981).

1. Questions 1, 2 and 3 relate to three items in the general appropriation bill appropriating funds for salaries and expenses of the Boston Municipal Court Department (item 0335-0001), the Boston Division of the Housing Court Department (item 0336-0100), and the Hampden County Division of the Housing Court Department (item 0336-0200). The provisions disapproved by the Governor in these items are nearly identical. Each states that the Administrative Justice of the Boston Municipal Court Department shall be the Administrative Justice of the Housing Court Department. In *Attorney Gen.* v. *Administrative Justice of the Boston Municipal Court Dep't of the Trial Court, supra,* the court applied to these provisions the principles stated above. The court determined that deletion of the provisions did not affect the legislative purpose to provide funds for the operation of the courts involved and that the provisions did not constitute restrictions or conditions on the particular appropriation items. The court concluded that "the provisions in line items 0335-0001, 0336-0100, and 0336-0200 disapproved by the Governor are separable provisions which the Governor properly treated as separate items and disapproved under § 5 of art. 63 of the Amendments to the Massachusetts Constitution." *Id.* at 517-518.

Our decision in the *Attorney General* case dictates affirmative answers to questions 1, 2 and 3.

2. Question 4 asks whether the Governor has the authority under § 5 of art. 63 to disapprove certain language in appropriation item 1101-2100 without disapproving or reducing the whole item.

We set out the entire item using brackets to identify the language disapproved by the Governor:

"*Fiscal Affairs Division.* For the administration of the division; [provided, that during the negotiation of any collective bargaining agreement the commissioner shall file with the house and senate committees on ways and means the provisions of each offer made by the Commonwealth, the total estimated cost of such offer, and an analysis of the ability of the commonwealth to provide sufficient revenues to pay for said offer; and provided further, that such information shall be filed with said committees for each subsequent collective bargaining offer made by the commonwealth;] including not more than forty-nine permanent positions                                          $1,337,200

| | |
|---|---:|
| "Highway Fund | 30.0% |
| "General Fund | 70.0%" |

The language struck does not direct the manner in which the appropriated funds are to be used by the fiscal affairs division, nor does it impose restrictions or conditions on the expenditure of the funds. In fact, the provisions are not directed at the fiscal affairs division at all; they are directed at the Commissioner of Administration, whose duty it is to represent the Commonwealth in collective bargaining negotiations. G. L. c. 150E, §§ 1 and 6. Under existing law the Commissioner must file copies of all executed collective bargaining agreements with the House and Senate committees on ways and means. G. L. c. 150E, § 7 (*a*). The provisions would expand this obligation by requiring the Commissioner, during collective bargaining negotiations, to file with the committees the total estimated cost of each offer made by the Commonwealth and an analysis of how the Commonwealth could provide revenues to pay for the offer.

To be sure, the fiscal affairs division, organizationally, has been placed in the Executive Office for Administration

and Finance, and the deputy commissioner for the division (as well as the budget director and the management director, who serve in the division) is appointed by the Commissioner. G. L. c. 7, §§ 4A and 4B. However, this administrative connection between the Commissioner and the division does not alter the fact that the provisions do not relate to the use of funds appropriated for the operation of the division. They relate, instead, to the Commissioner's function as the Commonwealth's representative in labor negotiations.

We conclude that the deleted provisions constitute separable general legislation which the Governor had authority under § 5 of art. 63 to disapprove.

Accordingly, we answer question 4 in the affirmative.

3. Question 5 asks whether the Governor has authority under § 5 of art. 63 to disapprove certain words and phrases in item 1201-0100 without disapproving or reducing the entire item.

The item appropriates funds for the administration of the Department of Revenue. The Governor approved so much of the item as provided: "For the administration of the department[    ], including audits, of certain foreign corporations, and for the rental, maintenance and operation of offices to assist in the administration of the department; provided, that said department shall establish and maintain an office in the town of Greenfield, to be open not less than three days per week; provided, that the comptroller shall transfer to the General Fund the sum of two hundred and sixty thousand dollars from the receipts of the cigarette tax in accordance with the provisions of paragraph (b) of section fourteen of chapter two hundred and ninety-one of the acts of nineteen hundred and seventy-five, including not more than one thousand five hundred and one permanent positions . . . $29,014,000." The provisions vetoed by the Governor began with the following language: "and provided further that no monies shall be allotted to said department unless the following provisions were implemented in the previous quarter . . . ." Detailed provisions follow directing the Governor to file periodic revenue reports with

the Legislature, and, if revenues are less than a designated amount, to request that the Legislature reduce expenditures or increase taxes to compensate for the difference. The Governor is also required to take certain other actions apparently aimed at avoiding a deficit for fiscal year 1982.[3]

We note that, with immmaterial differences, the deleted provisions also appear in § 194 of the general appropriation bill. This was one of seventy-seven "outside" sections that the Governor vetoed. It was the veto of these sections that prompted the House to request our opinion as to whether the Governor had the power under § 5 of art. 63 to disapprove any section of House Bill No. 6969 which was not an "item or part of an item." *Opinion of the Justices, ante* 820 (1981). The Justices responded that the Governor had authority to disapprove separable provisions attached to the general appropriation bill. It does not necessarily follow, however, that because a provision is inserted in an "outside" section of a general appropriation bill it must be treated as separable if also included in an item in the bill. To be sure, the placement in an item of a provision

---

[3] In summary, the provisions are as follows: On or before October 15, January 15, and April 15, the Governor must file with the House and the Senate a report of tax revenues and departmental revenues (such as fees, fines and penalties) by source, relative to the amount estimated by the budget submitted by the Governor on January 28, 1981, and received by the Commonwealth for the preceding calendar quarter and the fiscal year to date.

If the report due on October 15 shows revenues of less than $905,000,000, the Governor must, within ten days, file with the House and the Senate a message recommending reductions in expenditures or increases in taxes to compensate for the difference between revenues reported and $905,000,000. If no tax program is enacted within thirty days after submission of the message, the Governor must file with the House and the Senate another message recommending reductions in the operating budget for fiscal year 1982. If the General Court is not in session when the report is filed the Governor must submit to the House and Senate committees on ways and means and to the comptroller reductions in State spending plans equal to the difference between reported revenues and $905,000,000.

Substantially identical requirements are imposed on the Governor if the reports due on January 15 and April 15 contain revenues of less than $2,275,000,000 and $3,537,000,000 respectively.

that also appears in an "outside" section is some evidence that the Legislature considered the provision general legislation, separable from any specific item of appropriation. However, we do not consider this circumstance as controlling. Even if we were to give no weight to the fact that § 194 is nearly identical to the provisions disapproved by the Governor in item 1201-0100, we would conclude, nevertheless, that the provisions are separable and, hence, subject to the Governor's veto.

The purpose of the appropriation is for the administration of the Department of Revenue. The elimination of the provisions does not affect the purpose of providing funds for the operation of the department. The provisions do not specify the way the appropriation is to be spent. Nor do they direct a more detailed itemization of the appropriation. *Opinion of the Justices*, 294 Mass. 616, 619-622 (1936).

The disapproved language does not impose a restriction or condition on the expenditure of the appropriation. Although the item relates to the administration of the Department of Revenue, the provisions are aimed solely at the Governor. We recognize that the introductory language, quoted above, is cast in conditional terms, but skillful drafting will not convert a separable piece of general legislation to a restriction or condition on the expenditure of an appropriation. See *Attorney Gen.* v. *Administrative Justice of the Boston Municipal Court Dep't of the Trial Court, ante* 511, 517 (1981). Looking to the substance of the provisions, we find that they are not restrictions or conditions on the appropriation.

Accordingly, we answer question 5 in the affirmative.

4. The sixth question inquires whether the Governor has authority under § 5 of art. 63 to disapprove certain language in item 4800-0010 without disapproving or reducing the whole item.

We set out the entire item and bracket the vetoed provisions: "[During the fiscal year ending on June thirtieth, nineteen hundred and eighty-two, the department of social services shall expend for contracted, center-based day care a

sum not less than the sum expended by the department for said purposes during the fiscal year ending June thirtieth, nineteen hundred and eighty-one; provided, however, that during the fiscal year ending on June thirtieth, nineteen hundred and eighty-two, said department shall expend for family day care a sum not less than the sum expended for said purpose during the fiscal year ending on June thirtieth, nineteen hundred and eighty-one; Notwithstanding the provision of any general or special law to the contrary, the department of social services shall expend a sum not less than one million dollars on emergency services to battered women.]

"For the administration and maintenance of a program of Social Services, including not more than forty-seven permanent positions; provided that, any federal reimbursements received for this purpose shall be credited to the General Fund; and provided further, that purchased social services shall not be authorized at a level that will cause expenditures to exceed appropriation; and provided further that, no monies appropriated under this item shall be expended for tutoring or remedial reading of children awarded to the department and attending public schools; provided further, that all contracts for day care services funded in this item shall be amended to reflect negotiated rates not to exceed maximums established by the rate setting commission $9,459,894."

The deleted provisions reflect an intent by the Legislature to allocate appropriations for particular programs; contracted, center-based day care, family day care, and emergency services to battered women. That the Legislature designates the amounts allocated to the day care programs by referring to the amounts expended for those programs in fiscal year 1981, rather than by giving specific figures, is not material to our inquiry. Deletion of the provisions directly affects the legislative purpose to provide a certain level of funding for these programs. A principle of great importance in our tripartite form of government is "that it is for the Legislature, and not the executive branch, to determine

finally which social objectives or programs are worthy of pursuit." *Opinion of the Justices*, 375 Mass. 827, 833 (1978). The elimination of the provisions which restrict the use of the funds appropriated violates that fundamental precept. *Opinion of the Justices*, 294 Mass. 616, 621 (1936). The restrictions imposed by the struck provisions are insepa- rable parts of item 4800-0010, and, therefore, the Governor lacked authority under § 5 of art. 63 to disapprove them, but was limited to disapproving or reducing the entire item. *Opinion of the Justices*, 294 Mass. 616 (1936). *Opinion of the Justices*, 373 Mass. 911 (1977). See *Attorney Gen.* v. *Administrative Justice of the Boston Municipal Court Dep't of the Trial Court, ante* 511, 515-516 (1981). To the extent the restrictions apply to other items appropriating funds for the Department of Social Services, the Governor was free to reduce or disapprove each item, but not to disapprove the restrictions alone.

We note that the restrictions require that minimum amounts be spent on each program. As long as the underly- ing legislative programs and goals are not compromised, the Governor cannot be compelled to expend the full amount specified for particular programs. *Opinion of the Justices*, 375 Mass. 827, 836 (1978). The restrictions should be read in such a way as to give full effect to this principle. How- ever, the fact that in the restrictions is a provision that in- fringes on the Governor's constitutional spending power does not justify the Governor's disapproval of restrictions he otherwise is not empowered to disapprove.

With the reservation expressed above regarding the Gov- ernor's spending power, we answer question 6 in the nega- tive.

In summary, we answer:

Question 1, "Yes";
Question 2, "Yes";
Question 3, "Yes";
Question 4, "Yes";

Question 5, "Yes";
Question 6, "No" (with reservation).


The foregoing answers and opinions are submitted by the Chief Justice and the Associate Justices subscribing hereto on the fifth day of November, 1981.

EDWARD F. HENNESSEY
HERBERT P. WILKINS
PAUL J. LIACOS
RUTH I. ABRAMS
JOSEPH R. NOLAN