## OPINION OF THE JUSTICES.

OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* General Court, Governor, Appropriation of money. *General Court. Governor. Words,* "Items or parts of items."

Discussion regarding the scope of the Governor's authority under art. 63, § 5, of the Amendments to the Massachusetts Constitution to disapprove portions of an item contained in a general appropriation bill. [1205]

The Governor lacked the authority under art. 63, § 5, of the Amendments to the Massachusetts Constitution to disapprove two provisions of an item contained in a general appropriation bill for the administration and operation of the State Lottery Commission without disapproving the whole item where the provisions, which did not appropriate funds, but rather directed the way the funds appropriated for the lottery were to be used and qualified the appropriation, were not "items or parts of items." [1205-1207]

Where the Senate had before it the question whether to pass a bill seeking to restore certain provisions of a general appropriation bill to their status prior to the Governor's purported veto, that question propounded to the Justices presented them with a "solemn occasion" within the confines of the constitutional power permitting an advisory opinion. [1207-1208]

Where the Governor lacked the authority under art. 63, § 5, of the Amendments to the Massachusetts Constitution to disapprove two provisions of an item contained in a general appropriation bill, the provisions became effective law on the Governor's signing of the general appropriation bill and further legislative action was required to authorize expenditures for the costs associated with the provisions. [1208-1209]

The Governor lacked the authority under art. 63, § 5, of the Amendments to the Massachusetts Constitution to disapprove a portion of an item contained in a general appropriation bill regarding the State supplement to the Supplemental Security Income (SSI) program for fiscal year 1995 without disapproving the whole item, where the disapproved provisions were a restriction which directed the way the SSI appropriation was to be used and qualified the SSI appropriation. [1209-1212]

The Governor had the authority under art. 63, § 5, of the Amendments to
the Massachusetts Constitution to disapprove certain provisions of an
item contained in a general appropriation bill ordering the Executive
Office of Health and Human Services, the Department of Public Wel-
fare, the Massachusetts Commission for the Blind, and the division of
medical assistance to conduct a feasibility and cost effectiveness study
without disapproving the whole item where, since neither the study nor
the agencies ordered to carry it out were funded by the item, its re-
moval did not affect the use of the funds appropriated. [1212-1213]

On December 28, 1994, the Justices submitted the follow-
ing answers to questions propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of
Massachusetts:

The undersigned Justices of the Supreme Judicial Court
respectfully submit their answers to the questions set forth in
an order adopted by the Senate on November 10, 1994, and
transmitted to this court on November 14, 1994. The order
recites that there is pending before the General Court a mes-
sage from the Governor purporting to disapprove or veto cer-
tain items and sections of House Bill No. 5100, entitled "An
act making appropriations for the fiscal year nineteen hun-
dred and ninety-five for the maintenance of the departments,
boards, commissions, institutions and certain activities of the
Commonwealth, for interest, sinking fund and serial bond re-
quirements and for certain permanent improvements," pursu-
ant to art. 63, § 5, of the Amendments to the Massachusetts
Constitution, as amended by art. 90 of the Amendments.
Copies of the Governor's message and House Bill No. 5100
were transmitted with the order.

House Bill No. 5100 is the general appropriation bill for
fiscal year 1995. The order states that the Governor purports
to disapprove certain words and phrases in items 0640-0000
and 4405-2000 of § 2. There is pending before the Senate a
bill, Senate Bill No. 1834, entitled "An act restoring certain
provisions of the general appropriation act for the fiscal year
ending June thirtieth, nineteen hundred and ninety five." The
order states that "[i]t is the intention of the Senate by enact-

ing said bill to restore the words and phrases in said items 0640-0000 and 4405-2000 of [ ]§ 2 of House No. 5100 if the Governor's purported veto of said words and phrases is effective . . . ." The order concludes that "[g]rave doubt exist[s] as to whether the Governor's purported vetoes were ineffective and therefore the Senate needs to know the answer to [the] question[s] in order to determine whether it needs to act on Senate No. 1834 . . . ."

The Questions are:

> "(1) With reference to item 0640-0000 of section 2 of House No. 5100 of 1994, is it constitutionally competent for the Governor, acting pursuant to the provisions of section 5 of Article LXIII of the Amendments to the Constitution of the Commonwealth, to disapprove said item, in part, by striking out the following words 'provided, further, that no funds shall be expended from this item for any costs associated with advertising lottery games; provided further, that not more than two hundred fifty thousand dollars shall be expended for computer upgrades and enhancements', thus making it necessary to enact Senate No. 1834 for those words to become law?

> "(2) If the answer to question 1 is in the negative, is further legislative action required to authorize expenditures for the costs associated with advertising lottery games from said item 0640-0000, in addition to the amount appropriated for such purpose by item 0640-0010 of section 2 of chapter 60 of the acts of 1994?

> "(3) With reference to item 4405-2000 of section 2 of said House No. 5100, is it constitutionally competent for the governor, acting pursuant to the provisions of section 5 of Article LXIII of the Amendments to the Constitution of the Commonwealth, to disapprove said item, in part, by striking out the words 'provided further, that the optional supplement categories and pay-

ment amounts shall be those in effect on July first, nineteen hundred and ninety-three; provided further, that no new optional supplement categories shall be added in fiscal year nineteen hundred and ninety-five', thus making it necessary to enact Senate No. 1834 for said words to become law?

"(4) With reference to said item 4405-2000 of said section 2 of said House No. 5100, is it constitutionally competent for the governor, acting pursuant to section 5 of Article LXIII of the Amendments to the Constitution of the Commonwealth, to disapprove said item, in part, by striking out the words: 'provided further, that the executive office of health and human services, the department of public welfare, the Massachusetts commission for the blind, and the division of medical assistance are authorized and directed to study the feasibility and cost effectiveness of establishing a new optional supplement category, assisted living; provided further, that said study shall include the projected number of assisted living beneficiaries including the projected number of beneficiaries who would otherwise be placed in nursing homes; provided further, that said report shall include the first year cost and the projected annualized cost impact on the state supplement to supplemental income program and on medicaid expenditures; provided further, that said report shall be filed with the house and senate committees on ways and means no later than January first, nineteen hundred and ninety-five;' making it necessary to enact Senate No. 1834 for said words to become law?"[1]

---

[1] We invited interested parties to submit briefs. In response, the Governor filed a brief urging the Justices to answer questions 1, 3, and 4 in the affirmative and question 2 in the negative. Local 509, Service Employees International Union filed a brief urging the Justices to answer questions 1, 3, and 4 in the negative, question 2 in the affirmative, as did Counsel to the Massachusetts Senate.

The issue underlying questions 1, 3, and 4 is the scope of the Governor's power under § 5 of art. 63 to disapprove portions of an item in a general appropriation bill. Question 2 raises the issue whether an entire item is effective under art. 63 without further approval after portions of the item invalidly have been disapproved. The answers to all four questions turn on the language of § 5 of art. 63: "The governor may disapprove or reduce items or parts of items in any bill appropriating money. So much of such bill as he approves shall upon his signing the same become law. As to each item disapproved or reduced, he shall transmit to the house in which the bill originated his reason for such disapproval or reduction, and the procedure shall then be the same as in the case of a bill disapproved as a whole. In case he shall fail so to transmit his reasons for such disapproval or reduction within ten days after the bill shall have been presented to him, such items shall have the force of law unless the general court by adjournment shall prevent such transmission, in which case they shall not be law."

For purposes of art. 63, "items or parts of items" are "separable fiscal units." *Opinion of the Justices*, 384 Mass. 820, 822 (1981), quoting *Opinion of the Justices*, 294 Mass. 616, 620-621 (1936). "Words or phrases are not 'items or parts of items.' " *Id.* "[W]here a provision of an appropriation bill does not direct the way an appropriation is to be used or qualify the appropriation, the provision is separable and susceptible to an item veto." *Attorney Gen.* v. *Administrative Justice of the Boston Mun. Court Dep't of the Trial Court*, 384 Mass. 511, 515 (1981). The power of the Governor to disapprove items or parts of items under art. 63 "does not extend to the removal of restrictions imposed upon the use of the items appropriated." *Opinion of the Justices*, 384 Mass. at 822, quoting *Opinion of the Justices*, 294 Mass. at 621.

1. Question 1 asks whether the Governor has the authority under § 5 of art. 63 to disapprove two provisions in item 0640-0000 without disapproving the whole item. Because

these provisions are not "items or parts of items," the Governor did not have authority to disapprove them.

Item 0640-0000 appropriated $61,071,000 for the administration and operation of the State Lottery Commission. The entire item is set forth with the language disapproved by the Governor underlined:

> "For the expenses of the operation and administration of the state lottery and arts lottery; provided, that eight hundred and sixty thousand dollars of this item shall be for increased production of instant tickets and pull-tabs, so-called; provided further, that two million dollars shall be for the acquisition of instant ticket vending machines; *provided further, that no funds shall be expended from this item for any costs associated with advertising lottery games; provided further, that not more than two hundred and fifty thousand dollars shall be expended for computer upgrades and enhancements*; provided further, that all the positions in this item shall not be subject to chapters thirty and thirty-one of the General Laws; and provided further, that twenty-five percent of this appropriation shall be transferred from the State Lottery Fund to the General Fund quarterly . . . $61,071,000."

The underlined provisions do not appropriate funds, but rather direct the way the funds appropriated for the lottery are to be used and qualify the appropriation. The first provision restricts the item by ordering that none of the $61,071,000 appropriated for the operation and administration of the lottery is to be used for advertising lottery games.[2] See *Opinion of the Justices*, 373 Mass. 911, 913 (1977) (opining that Governor could not remove restriction in an appropriation for medical assistance program which provided that none of the funds could be used to pay for abortions).

---

[2]Funds for advertising were appropriated in a separate item. Item 0640-0010 appropriates $2,800,000 for advertising lottery games.

The second provision qualifies the appropriation by limiting the amount of the $61,071,000 which can be used for computer upgrades and enhancements. See *Opinion of the Justices*, 294 Mass. at 619, 619-621 (minimum and maximum limits on the use of funds within an item for certain purposes are restrictions which cannot be disapproved). The removal of these restrictions would enlarge the amount of funds appropriated for advertising the lottery and for upgrading computers. The Governor's veto power is limited to disapproval or reduction of appropriated monies; it does not extend to enlarging the purpose for which appropriations may be expended. *Id.* at 621 (Governor does not have authority to enlarge appropriation by removing "restrictions imposed upon the use of the items appropriated"). *Opinion of the Justices*, 411 Mass. 1201, 1214 (1991) ("If the effect of the Governor's disapproval . . . [is] to increase the appropriation for [certain] purposes or to remove restraints or conditions imposed on the use of the appropriated money, or to redirect the appropriated money in such a way as to alter the legislative purpose of the item, the disapproval [is] unauthorized"). The Governor may not disapprove such restrictions without disapproving the item as a whole. See *Attorney Gen., supra* at 515.

We answer question 1, "No."

2. Question 2 asks, if the answer to question 1 is negative, is legislative action required to authorize expenditures for advertising lottery games from the monies appropriated in item 0640-0000. In answering this question, we must consider whether there is a solemn occasion. "By a solemn occasion the Constitution means some serious and unusual exigency. It has been held to be such an exigency when the Governor or either branch of the Legislature, having some action in view, has serious doubts as to their power and authority to take such action, under the Constitution, or under existing statutes." *Answer of the Justices*, 373 Mass. 867, 871 (1977), quoting *Answer of the Justices*, 148 Mass. 623, 625-626 (1889). "The Justices are not empowered to answer questions bearing on the wisdom or expediency of proposed

legislation." *Opinion of the Justices*, 385 Mass. 1201, 1203 (1982). "We have repeatedly said that a request for an opinion regarding the effect or construction of a statute is not an 'important question of law' or a 'solemn occasion' within the meaning of the Constitution, Part II, c. 3, art. 2." *Opinions of the Justices*, 383 Mass. 895, 915 (1981). In *Answer of the Justices*, 406 Mass. 1220, 1225-1226 (1989), the Justices stated that, "[i]f the Senate had before it the question whether to pass a bill seeking to restore a provision in the appropriations act to its status prior to a Governor's purported veto of it, the occasion would be a solemn one. That would be so because, if the Senate were in doubt as to whether the Governor's purported veto was ineffective, it would need to know the answer to the doubtful question in order to determine whether it needed to act on the pending bill." The Senate has before it a pending bill. Whether Senate action is required depends on whether the Governor's purported veto was effective. Thus, there is a solemn occasion and we proceed to answer the question.

As required under art. 63, the general appropriation bill was presented to the Governor for his approval. After disapproving, inter alia, portions of item 0640-0000 of the general appropriation bill, the Governor signed the bill. Because item 0640-0000 was not validly disapproved, it became effective law on the signing of the general appropriation bill. Further legislative action thus is required to authorize advertising expenditures beyond that provided in item 0640-0010.

Item 0640-0000 as a whole is effective. Under § 5 of art. 63, affirmative approval by the Governor of each general appropriation bill is required for the bill to become law. *Opinion of the Justices*, 297 Mass. 577, 580 (1937) ("No money can be paid out of the treasury except under the provisions of the budget which require both executive and legislative sanction"). *Opinion of the Justices*, 300 Mass. 630, 636 (1938) (quoting above). The Governor approved the general appropriation bill when he signed it. Because the disapproval of the underlined language was invalid, the Governor did not transmit valid disapproval of item 0640-0000, or any

portion thereof. Therefore, item 0640-0000 in its entirety was not disapproved, and on the executive's signing the general appropriation bill, became law. See *Opinion of the Justices*, 294 Mass. at 622 ("Since the disapproval of the condition was without effect, the general approval of the act gave [the item] validity. If, however, the approval be treated as a whole and therefore conditional and a nullity, the time for veto has expired and the entire bill takes effect because of the failure of His Excellency the Governor to return the bill with a veto. In either case [the item] has become law").

We answer question 2, "Yes."

3. Questions 3 and 4 address the Governor's authority to disapprove portions of item 4405-2000, which appropriates $191,994,449 for the State supplement to the Supplemental Security Income (SSI) program for fiscal year 1995. SSI is a Federal program designed to provide monthly benefits to aged, blind, or disabled persons with limited income and resources. 42 U.S.C. §§ 1381 et seq. (1988). See generally *Kraft v. Commissioner of Pub. Welfare*, 398 Mass. 357, 361-362 (1986) (describing the Federal SSI program and the Commonwealth's supplemental assistance program). The Secretary of the United States Department of Health and Human Services (Secretary) is responsible for administering SSI benefits payments. 42 U.S.C. § 1381a. The SSI program encourages States to supplement the federally-established minimum benefits levels to qualified SSI beneficiaries by entering into agreements with the Secretary.[3] General Laws c. 118A, § 3, provides that the Commissioner of Public Welfare (commissioner) "shall enter into an agreement with the Secretary . . . [who] shall . . . administer the program of state supplementary payments . . . . Such agreement shall contain all requirements for and limitations and qualifications on state supplementary payments . . . . Such

---

[3]The amount of money beneficiaries receive from the State supplement above the Federal minimum benefit level is known as a State "supplementary payment." 42 U.S.C. §§ 1382e (a) and (b).

agreement may include . . . : provision for varying catego-
ries of assistance for state supplementation . . . ."

Pursuant to G. L. c. 118A and 42 U.S.C. §§ 1381 et seq.,
the commissioner contracted with the Federal government to
provide a State supplement to the SSI program for fiscal
year 1995. Questions 3 and 4 address the Governor's disap-
proval of two groups of provisions in item 4405-2000. Item
4405-2000 reads as follows, with the language at issue in
Question 3 bracketed and the language at issue in Question 4
underlined:

> "For the state supplement to the supplemental security
> income program for the aged and disabled, including a
> program for emergency needs for supplemental security
> income recipients; provided, that the expenses of special
> grants recipients residing in rest homes, as provided in
> section seven A of chapter one hundred and eighteen A
> of the General Laws, may be paid from this item; pro-
> vided further, that the department shall seek all neces-
> sary waivers to allow any administrative costs associ-
> ated with the issuing of the state supplemental grant to
> be paid for from a corresponding portion of said pay-
> ment; provided further, that services shall be provided
> to the extent determined to be possible within the ap-
> propriation, and the department shall amend applicable
> rules, regulations or eligibility determination methods
> and seek all necessary waivers to ensure expenditures
> under said program do not exceed the appropriation
> herein; [provided further, that the optional supplement
> categories and payment amounts shall be those in effect
> on July first, nineteen hundred and ninety-three; pro-
> vided further, that no new optional supplement catego-
> ries shall be added in fiscal year nineteen hundred and
> ninety-five]; *provided further, that the executive office
> of health and human services, the department of public
> welfare, the Massachusetts commission for the blind,
> and the division of medical assistance are authorized
> and directed to study the feasibility and cost effective-*

*ness of establishing a new optional supplement cate-*
*gory, assisted living; provided further, that said study*
*shall include the projected number of assisted living*
*beneficiaries including the projected number of benefi-*
*ciaries who would otherwise be placed in nursing*
*homes; provided further, that said report shall include*
*the first year cost and the projected annualized cost*
*impact on the state supplement to supplemental income*
*program and on medicaid expenditures; provided fur-*
*ther, that said report shall be filed with the house and*
*senate committees on ways and means no later than*
*January first nineteen hundred and ninety-five;* and pro-
vided further, that the expenses of a program to aid
emergency aid to the elderly, disabled and children re-
cipients in becoming eligible for said supplemental se-
curity income program may be paid from this item . . .
$191,994,449."

Question 3 asks whether the Governor, without disapprov-
ing the item as a whole, has the authority under § 5 of
art. 63 to disapprove the bracketed language in item 4405-
2000 above. Because the Governor only has the authority to
disapprove "items or parts of items" he does not have the
authority to disapprove the bracketed provisions, which qual-
ify and direct the use of the funds appropriated in item 4405-
2000.

Just as the purportedly disapproved provisions in item
0640-0000 direct the way the lottery appropriation is to be
used and qualify the appropriation, so the bracketed set of
provisions in item 4405-2000 is a restriction which directs
the way the SSI appropriation is to be used and qualifies the
SSI appropriation. It sets the categories and amounts for the
SSI State supplemental benefits and also prohibits any op-
tional supplement category from being added in fiscal year
1995 in item 4405-2000. By disapproving the bracketed pro-
visions, the Governor eliminated restrictions on the appropri-
ation. The Governor lacks such authority. See *Attorney Gen.,*
*supra* at 515-516 (provisions directing the way appropriation

is to be used or qualifying appropriation are not items subject to Governor's veto). The fact that the Legislature used the words "provided further" rather than "subject to the condition that" is not determinative. We look to the substantive effect of the Governor's disapproval. Cf. *Opinion of the Justices*, 384 Mass. 828, 836 (1981); *Attorney Gen.*, *supra* at 517.

We answer question 3, "No."

4. Question 4 asks whether the Governor, without disapproving the whole item, has the authority under § 5 of art. 63 to disapprove another group of provisions, namely the underlined portion of item 4405-2000 above. Because this set of provisions constitutes a separable item, the Governor has the power to disapprove it.

The underlined set of provisions orders the Executive Office of Health and Human Services, the Department of Public Welfare, the Massachusetts Commission for the Blind, and the division of medical assistance to conduct a feasibility and cost effectiveness study. Neither the study nor the agencies ordered to carry it out are funded by item 4405-2000.[4] Because the study was not funded by item 4405-2000, its removal does not affect the use of the funds appropriated. The underlined set of provisions "does not direct the way [the] appropriation is to be used or qualify the appropriation." *Attorney Gen.*, *supra* at 515. Thus, it constitutes an "item or part of an item" which can be disapproved. *Id*. See *Opinion of the Justices*, 411 Mass. at 1210 (allowing Governor's removal of provisions because "[t]hey did not have impact on the legislative purpose, use, or amount of the appropriation, nor did they impose a condition or restriction directly related to the use of the appropriated funds"); *Opinion of the Justices*, 384 Mass. at 833 (allowing disapproval of provision in appropriation for the fiscal affairs division where "language struck does not direct the manner in which the appropriated

---

[4]While the Department of Public Welfare administers the State SSI program, G. L. c. 118A, § 1 (1992 ed.), item 4405-2000 only funds the program, not the department generally.

funds are to be used by the fiscal affairs division, nor does it impose restrictions or conditions on the expenditure of the funds . . . [and] the provisions are not directed at the fiscal affairs division").

The underlined provisions are not appropriation provisions. See *Opinion of the Justices*, 323 Mass. 764, 766 (1948) (pay increase for certain Commonwealth employees not an appropriation). See also *id.*, quoting *State* v. *Moore*, 50 Neb. 88, 96 (1896) (defining appropriation as setting "apart from the public revenue a certain sum of money for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object and no other"). They constitute a general legislative order. That this order is embedded in an appropriation item does not change the fact that it is a separable general order. *Opinion of the Justices*, 384 Mass. at 836 ("skillful drafting will not convert a separable piece of general legislation to a restriction or condition on the expenditure of an appropriation"). The disapproval of such orders is permitted because otherwise the Legislature could, by placing general laws within appropriation bills, immunize them from veto. *Opinion of the Justices*, 384 Mass. at 826. "[T]he legislature [may not] use its appropriation power to infringe on the Governor's constitutional right to veto matters of substantive legislation . . . . In order to avoid this result . . . when the legislature inserts inappropriate provisions in a general appropriation bill, such provisions must be treated as 'items' for purposes of the Governor's item veto power over general appropriation bills." *Id.*, quoting *Henry* v. *Edwards*, 346 So. 2d 153, 158 (La. 1977).

We answer question 4, "Yes."

In summary, we answer:

Question 1, "No";

Question 2, "Yes";

Question 3, "No";

Question 4, "Yes."

The foregoing answers and opinion are submitted by the Chief Justice and the Associate Justices subscribing hereto on the twenty-eighth day of December, 1994.

> PAUL J. LIACOS
> HERBERT P. WILKINS
> RUTH I. ABRAMS
> JOSEPH R. NOLAN
> NEIL L. LYNCH
> FRANCIS P. O'CONNOR
> JOHN M. GREANEY