Attorney Gen. v. Administrative Justice of the Boston Mun. Ct. Dep't of the Trial Ct.

ATTORNEY GENERAL *vs.* ADMINISTRATIVE JUSTICE OF THE
BOSTON MUNICIPAL COURT DEPARTMENT OF THE
TRIAL COURT.

Suffolk.   October 9, 1981. — October 26, 1981.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Constitutional Law*, General Court, Governor, Appropriation of money.
   *General Court.   Governor.   Housing Court,* Administrative Justice.

Certain provisions in line items of a general appropriation bill transfer-
   ring the title and duties of the Administrative Justice of the Housing
   Court Department to the Administrative Justice of the Boston Munici-
   pal Court Department were lawfully disapproved by the Governor
   acting pursuant to § 5 of art. 63 of the Amendments to the Massachu-
   setts Constitution.   [514-518]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on September 16, 1981.

The case was reported by *Nolan, J.*

The case was submitted on briefs.

*Francis X. Bellotti,* Attorney General, *Thomas R. Kiley,
Donald K. Stern & E. Michael Sloman,* Assistant Attorneys
General, for the plaintiff.

*Max Volterra* for the defendant.

*James J. Cotter, III,* for Jean Coles & others, amici
curiae.

HENNESSEY, C.J.   The Attorney General commenced this
action by a complaint filed in the Supreme Judicial Court
for Suffolk County.   He seeks an order in the nature of quo
warranto (G. L. c. 249, § 9), or, alternatively, an order
pursuant to the court's general superintendence power
(G. L. c. 211, § 3), declaring that the defendant, the Ad-
ministrative Justice of the Boston Municipal Court Depart-
ment of the Trial Court, is not also the Administrative

Justice of the Housing Court Department of the Trial Court. The circumstances giving rise to this action are the Legislature's approval of provisions in certain line items of the fiscal year 1982 general appropriation bill (St. 1981, c. 351) designating the Administrative Justice of the Boston Municipal Court Department as the Administrative Justice of the Housing Court Department, and the Governor's purported disapproval of those provisions. The defendant admitted all the material facts in his answer. A single justice reserved decision and reported to the full court the following questions:

"1. Does the defendant lack authority to hold the office of Administrative Justice of the Housing Court Department of the Trial Court because the provisions of the general appropriation bill, St. 1981, c. 351, purporting to confer the title and statutory duties of that office, were lawfully disapproved by the Governor pursuant to Section 5 of Article 63 of the Amendments to the Massachusetts Constitution?

"2. Does the defendant lack authority to hold the office of Administrative Justice of the Housing Court Department of the Trial Court, notwithstanding the provisions of the general appropriation bill, because under the terms of St. 1978, c. 478, § 332, another Justice of the Trial Court continues to hold and to exercise the statutory duties of that office?"

We conclude that the Governor lawfully disapproved the provisions in issue pursuant to authority conferred by § 5 of art. 63 of the Amendments to the Massachusetts Constitution. Accordingly, we answer the first question in the affirmative. In doing so, we conclude that the defendant does not hold the position of Administrative Justice of the Housing Court Department of the Trial Court, and thus resolve the dispute that gave rise to this action. Consequently, there is no need to answer the second question.

We summarize the material facts. The defendant, Harry J. Elam, is the duly appointed Administrative Justice of the Boston Municipal Court Department. E. George Daher has held the title of, and exercised the powers and duties of, Ad-

384 Mass. 511                                513

Attorney Gen. v. Administrative Justice of the Boston Mun. Ct. Dep't of the Trial Ct.

ministrative Justice of the Housing Court Department since July 1, 1978, the effective date of the Court Reorganization Act (St. 1978, c. 478). Section 92 (adding G. L. c. 185C) of the Act established the Housing Court Department of the Trial Court, consisting of the City of Boston Division and the Hampden County Division. Section 332 of the Act provided that the then senior justice of the Housing Courts would assume the title of Administrative Justice of the Housing Court Department and hold the office until he left judicial office or declined to serve as administrative justice. It is under this provision that Judge Daher has held the title of Administrative Justice of the Housing Court Department.

On or about July 15, 1981, the General Court passed a general appropriation bill for fiscal year 1982 and submitted it to the Governor. The bill included separate line item appropriations for each division of the Housing Court Department, but eliminated funding for its administrative office. Line item 0336-0100, providing for salaries and expenses of the Boston division of the Housing Court Department, includes the following language: "[that, notwithstanding the provisions of chapters one hundred and eighty-five C and two hundred and eleven B of the General Laws to the contrary, the administrative justice of the housing court department holding such office prior to the effective date of this act shall receive a salary equivalent to a justice of the trial court]; and provided further that notwithstanding said chapters of the General Laws the administrative justice of the Boston municipal court department shall be the administrative head of the Boston division of the housing court department . . . ."[1] Line item 0336-0200, for salaries and expenses of the Hampden County Division of the Housing Court Department, provides as follows: "that, notwithstanding the provisions of chapters one hundred and eighty-five C and two hundred and eleven B of the General Laws to the contrary, the administrative justice of the Boston municipal court department shall be the administrative head of the Hampden county division of the housing court

---

[1] The bracketed language was not disapproved by the Governor.

department . . . ." Line item 0335-0001, providing for salaries and expenses of the Boston Municipal Court, includes the following provision: "provided that, notwithstanding the provisions of chapters one hundred and eighty-five C and two hundred and eleven B of the General Laws to the contrary, the administrative justice of said Boston municipal court department shall serve as the administrative justice of the housing court department of the trial court . . . ."

On July 21, 1981, the Governor signed the general appropriation bill and returned it to the House of Representatives with a message indicating he had disapproved the above items to the extent they transferred to the defendant administrative authority over the Housing Court Department. Although the House overrode the Governor's disapproval or reduction of certain other items and requested the opinion of the Justices of this court as to the Governor's authority to disapprove certain riders or outside sections of the bill,[2] it took no action on his disapproval of the provisions in issue.

On August 17, 1981, the Chief Administrative Justice of the Trial Court advised the defendant in writing that, absent any contrary statutory interpretation, he should be prepared to assume the additional duties of administrative head of the Housing Court Department on August 21, 1981, the date the provisions were to take effect. He took this action "to ensure that the administration of the Trial Court proceeds in an orderly manner. . . ."

1. The first question asks whether the defendant lacks authority to hold the office of Administrative Justice of the Housing Court Department because the provisions in the general appropriation act purporting to confer on him the title and duties of the office were validly disapproved by the Governor pursuant to § 5 of art. 63 of the Amendments. Section 5 provides: "The governor may disapprove or reduce items or parts of items in any bill appropriating money. So much of such bill as he approves shall upon his

---

[2] See the Justices' response in *Opinion of the Justices, post* 820 (1981), discussed in the text.

signing the same become law. As to each item disapproved or reduced, he shall transmit to the house in which the bill originated his reason for such disapproval or reduction, and the procedure shall then be the same as in the case of a bill disapproved as a whole. In case he shall fail so to transmit his reasons for such disapproval or reduction within ten days after the bill shall have been presented to him, such items shall have the force of law unless the general court by adjournment shall prevent such transmission, in which case they shall not be law." The Justices of this court have very recently had occasion to consider the extent of the Governor's power to disapprove "items or parts of items" under this section. *Opinion of the Justices, post* 820 (1981). We said that the Governor had the power under § 5 to disapprove any section of the general appropriation bill which was not an "'item or part of an item.'" After reviewing the history and language of art. 63, we concluded that "for purposes of his veto power under § 5, the Governor may treat as an 'item' any separable provision attached to the general appropriation bill." *Id.* at 824. This special veto power is in no way diminished by the fact that the provision appears as part of a line item rather than as a separate section of the general appropriation bill. However, if the provision is a restriction or condition imposed by the Legislature on the appropriation in the item, the Governor may not disapprove the provision alone; he may only approve the entire item (with the restriction or condition), or disapprove or reduce the entire item (with the restriction or condition). *Opinion of the Justices,* 294 Mass. 616 (1936). *Opinion of the Justices,* 373 Mass. 911 (1977).

Thus, among the States which, like Massachusetts, permit partial vetoes, our conclusion accords with what appears to be the majority view, viz.: that where a provision of an appropriation bill does not direct the way an appropriation is to be used or qualify the appropriation, the provision is separable and susceptible to an item veto.[3] Stated

---

[3] The Attorney General correctly cites the following cases to support the conclusion that this is the majority view: *State ex rel. Turner* v. *Iowa State Highway Comm'n,* 186 N.W.2d 141, 150-151 (Iowa 1971). *Henry*

another way: to determine whether the provisions were validly disapproved by the Governor, we must consider whether their deletion altered the purposes of the appropriations or eliminated valid restrictions or conditions.

The line items involved provide appropriations for the operation of the Boston Municipal Court Department and the Housing Court Department. In no way does the deletion of the provision that the Administrative Justice of the Boston Municipal Court Department shall be the Administrative Justice of the Housing Court Department affect the object of the Legislature to provide funds for the operation of these courts.

Nor do we perceive that the disapproved provisions constitute restrictions or conditions on the expenditure of funds. In *Opinion of the Justices*, 294 Mass. 616, 619 (1936), the Justices considered a provision added by the Legislature to an item appropriating a sum not exceeding $100,000 for "extraordinary expenses and for transfer made to cover deficiencies." The provision disapproved by the Governor was that certain minimum amounts of the $100,000 be set aside for various categories of contemplated expenditures.[4]

---

v. *Edwards,* 346 So. 2d 153, 157-158 (La. 1977). *State ex rel. Cason* v. *Bond,* 495 S.W.2d 385, 389-390 (Mo. 1973). *State ex rel. Sego* v. *Kirkpatrick,* 86 N.M. 359, 364-365 (1974). *State ex rel. Link* v. *Olson,* 286 N.W.2d 262, 270-271 (N.D. 1979). *State ex rel. Brown* v. *Ferguson,* 291 32 Ohio St. 2d 245, 250 (1972). *Commonwealth* v. *Dodson,* 176 Va. 281, 289-290, 296 (1940). Although we draw support from these cases, we continue to rely on, and to be guided by, art. 63's history and language which clearly manifest the framers' intent to strike a balance between the exercise of legislative and executive powers in the important matter of appropriating money for the operation of the government. See *Opinion of the Justices, supra* at 823-827.

[4] The language added by the Legislature was: "subject, however, to the condition that not less than fifty thousand dollars of the sum appropriated by this item shall be reserved for use in carrying out the provisions of sections twenty-five to thirty-three, inclusive, for chapter thirty-three of the General Laws, as so appearing, not less than ten thousand dollars thereof shall be reserved for use for the entertainment of the President of the United States and other distinguished guests while visiting or passing through the commonwealth, and not more than five thousand dollars

The Governor there "did not undertake to veto the appropriation . . . or any part of it, nor to reduce that amount or any part of it apportioned to a specific purpose. He sought, rather . . . to enlarge the appropriation made by the General Court by throwing the $100,000 into a common fund to be used for any one of several different purposes." 294 Mass. at 620-621. In the present case, the effect of the Governor's partial vetoes is not to enlarge the appropriations made by the Legislature for the courts involved. Nor do the vetoes infringe on the General Court's power "to set apart from the public revenue a certain sum of money for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object and for no other." *Opinion of the Justices,* 323 Mass. 764, 766 (1948), quoting from *State* v. *Moore,* 50 Neb. 88, 96 (1896).

While we do not intimate that skillful drafting may transform a separable provision of general legislation to a restriction or condition, we note that the Legislature here did not use conditional or restrictive wording in the disapproved provisions. The relevant language in the provision in line item 0335-0001, for example, is simply: "provided that . . . the administrative justice of said Boston municipal court department shall serve as the administrative justice of the housing court." The wording of the other two provisions is nearly identical. Contrast this language with "subject, however, to the condition that," used in the provision considered in *Opinion of the Justices,* 294 Mass. 616, 619 (1936), and "no funds authorized under this item shall be allowed to pay for," used in the provision considered in *Opinion of the Justices,* 373 Mass. 911, 912 (1977). This contrast in wording further buttresses our conclusion that the provisions were not conditions or restrictions on the appropriations involved.

We conclude that the provisions in line items 0335-0001, 0336-0100, and 0336-0200 disapproved by the Governor are

thereof, in the aggregate, shall be transferred to items ninety-five, ninety-seven, ninety-eight and ninety-nine . . . ." *Opinion of the Justices,* 294 Mass. 616, 619 (1936).

separable provisions which the Governor properly treated as separate items and disapproved under § 5 of art. 63 of the Amendments to the Massachusetts Constitution.

2. The second reported question asks whether the defendant lacks authority to hold the office of Administrative Justice of the Housing Court Department because another Trial Court justice continues to hold and to exercise the duties of the office. Because the answer given to the first reported question is dispositive of the case, we need not answer the second.

We note, however, that the Attorney General and amici curiae raise the difficult issue whether the constitutionally protected tenure of the incumbent Administrative Justice of the Housing Court Department is impermissibly affected because the language at issue is an isolated instance of legislative alteration of a particular judicial office. They argue that the contested provisions are an unconstitutional legislative appointment of a judicial officer. Compare *Opinion of the Justices,* 372 Mass. 883, 902-905 (1977). Further, the assertion is that the legislative language is an implied repeal of § 332 of the Court Reorganization Act (St. 1978, c. 478), but they question whether an appropriation act could effect any change beyond the related fiscal year. These arguments raise significant constitutional questions which need not be addressed here.

The case is remanded to the county court where an order is to be entered consistent with this opinion and consistent with our conclusions that the Governor lawfully disapproved the legislative provisions here in issue, that the Administrative Justice of the Boston Municipal Court Department does not validly hold title to the additional position of Administrative Justice of the Housing Court Department, and that the general appropriation bill (St. 1981, c. 351) as disapproved in part by the Governor has had no effect upon the standing of E. George Daher as Administrative Justice of the Housing Court Department of the Trial Court.

*So ordered.*