# OPINIONS OF THE JUSTICES.

### OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law*, General Court, Governor, Appropriation of money. *General Court. Governor.*

The Governor had authority under art. 63, § 5, of the Amendments to the Constitution of the Commonwealth to disapprove language in a certain line item of the fiscal year 1992 general appropriation act appropriating money for the office of the Commissioner of Banks, as well as to disapprove two separate ("outside") sections of the act to which reference was made in the disapproved language of the line item, where the disapproved provisions, which related to the management of the Mutual Savings Central Fund, had no impact on the legislative purpose, use, or amount of the money appropriated for the office of the Commissioner of Banks and imposed no restriction directly related to the use of the money appropriated. [1210-1211]

The Governor did not have authority under art. 63, § 5, of the Amendments to the Constitution of the Commonwealth to disapprove language in certain line items of a general appropriation act designating the source of the money appropriated. [1211-1213]

The Governor had authority under art. 63, § 5, of the Amendments to the Constitution of the Commonwealth to disapprove a separate ("outside") section of a general appropriation act even though his doing so rendered certain line items ineffective. [1213]

The Governor had authority under art. 63, § 5, of the Amendments to the Constitution of the Commonwealth to disapprove the words "including salaries and expenses for litigation" in the line items of a general appropriation act appropriating money for the victim and witness assistance programs of the several district attorneys' offices, where the Governor's action did not have the effect of increasing the amount appropriated for other purposes, or removing any legislatively imposed restraint or condition on the use of the appropriated money, or reducing the appropriated money in such a way as to alter the legislative purpose of the item. [1213-1214]

The Governor's disapproval of certain provisions in a general appropriation act was without effect, where he did not submit the reasons for his disapproval in timely fashion to "the house in which [the act] originated"

as contemplated by art. 63, § 5, of the Amendments to the Constitution of the Commonwealth, the Justices being of opinion that the quoted language refers to that office responsible for receiving papers on behalf of that branch of the General Court. [1214-1215]

The Governor does not have authority under art. 63, § 5, of the Amendments to the Constitution of the Commonwealth to disapprove words or phrases within a separate ("outside") section of a general appropriation act. [1216]

On December 5, 1991, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court respectfully submit their response to the questions set forth in an order adopted by the House of Representatives on September 11, 1991, and transmitted to this court on September 16, 1991.[1] The order indicates that there is pending before the House of Representatives a message from his Excellency the Governor in which he "disapproved or vetoed certain items and sections of . . . House 5800 in their entirety and in part and reduced certain items." A copy of the general appropriation bill for fiscal year 1992, 1991 House Doc. No. 5800, and a copy of the Governor's message, 1991 House Doc. No. 5925, were transmitted with the order.

The order states in part: "It is the intention of the House of Representatives to consider for passage, notwithstanding the objections of the Governor, various items which the Governor had a constitutional right to disapprove or reduce . . . ." The order also recites that "[g]rave doubt exists as to the constitutional right of the Governor to disapprove certain words and phrases in said items . . . without disapproving or

---

[1] We invited interested persons and organizations to file briefs on or before October 4, 1991, and thereafter approved requests to extend the deadline to October 9, 1991. We acknowledge the assistance of briefs from: the Governor; Counsel to the Senate; Counsel to the House of Representatives; the Mutual Savings Central Fund, Inc., and Member Savings Banks; and Citizens Within the Ten Mile Radius. We also received a memorandum from the Massachusetts Taxpayers Foundation, Inc.

reducing said items . . ."; to disapprove certain wording and sections; and, "as to whether the Governor violated the doctrine of separation of powers in Article XXX of Part the First of the Constitution of the Commonwealth."

Our opinion is requested on these questions:

"1. Is it constitutionally competent under the provisions of section 5 of Article LXIII of the Amendments to the Constitution for the Governor to disapprove in said item 9221-1000 certain words and phrases which constitute restrictions imposed upon the use of said item without disapproving the entire item?

"2. Is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove in said item 9221-1000 certain words and phrases and thereby alter the legislative purpose of said item without disapproving the entire item?

"3. If it is not constitutionally competent for the Governor to disapprove said words and phrases in said item 9221-1000, is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove said sections 270 and 271 without disapproving said item 9221-1000 in its entirety?

"4. Is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove in said item 2100-0001 certain words and phrases which constitute restrictions imposed upon the use of said item without disapproving the entire item?

"5. Is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove in said item 2100-0001 certain words and phrases and thereby alter the legislative purpose of said item without disapproving the entire item?

"6. Is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove in said item 2440-0012 certain words and phrases which constitute restrictions imposed upon the use of said item without disapproving the entire item?

"7. Is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove in said item 2440-0012 certain words and phrases and thereby alter the legislative purpose of said item without disapproving the entire item?

"8. If it is not constitutionally competent for the Governor to disapprove said words and phrases in said items 2100-0001 and 2440-0012, is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove said section 50 without disapproving said items 2100-0001 and 2440-0012 in their entirety?

"9. Is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove in each of said items 0340-0130, 0340-0230, 0340-0330, 0340-0430, 0340-0530, 0340-0630, 0340-0730, 0340-0830, 0340-0930, 0340-1030, 0340-1130 certain words and phrases which constitute restrictions imposed upon the use of said item without disapproving the entire item?

"10. Is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove in each of said items 0340-0130, 0340-0230, 0340-0330, 0340-0430, 0340-0530, 0340-0630, 0340-0730, 0340-0830, 0340-0930, 0340-1030, 0340-1130 certain words and phrases and thereby alter the legislative purpose of said item without disapproving the entire item?

"11. Was the Governor's action in disapproving certain words and phrases in sections 43 and 49 invalid, the time for transmitting reasons for said disapproval to the house in which the bill originated having elapsed without the Governor having so filed reasons therefor in accordance with said section 5 of said Article LXIII?

"12. Can the Governor, acting pursuant to said section 5 of said Article LXIII, disapprove any words and phrases in section 152 which is a so-called outside section without disapproving said section in its entirety?

"13. If the answer to question 11 is in the negative, can the Governor, acting pursuant to said section 5 of said Article LXIII, disapprove any words and phrases

in sections 43 and 49 which are so-called outside sections without disapproving said sections in their entirety?

"14. If the answers to questions 11 and 13 are in the negative, is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove certain words and phrases in section 43 which are integral and nonseparable provisions of said section without disapproving the entire section?

"15. If the answers to questions 11 and 13 are in the negative, is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove certain words and phrases in section 49 which are integral and nonseparable provisions of said section without disapproving the entire section?

"16. If the answer to question 12 is in the negative, is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove certain words and phrases in section 152 which are integral and nonseparable provisions of said section without disapproving the entire section?"

Article 63, § 5, as amended by art. 90 of the Amendments to the Massachusetts Constitution, provides: "The governor may disapprove or reduce items or parts of items in any bill appropriating money. So much of such bill as he approves shall upon his signing the same become law. As to each item disapproved or reduced, he shall transmit to the house in which the bill originated his reason for such disapproval or reduction, and the procedure shall then be the same as in the case of a bill disapproved as a whole. In case he shall fail so to transmit his reasons for such disapproval or reduction within ten days after the bill shall have been presented to him, such items shall have the force of law unless the general court by adjournment shall prevent such transmission, in which case they shall not be law."

Our opinion on the several questions is especially informed by *Opinion of the Justices*, 294 Mass. 616 (1936) (*Opinion*

*of the Justices I*), *Opinion of the Justices*, 384 Mass. 820
(1981), submitted on September 2, 1981 (*Opinion of the
Justices II*), *Attorney Gen. v. Administrative Justice of the
Boston Municipal Court Dep't of the Trial Court*, 384 Mass.
511 (1981), decided on October 26, 1981, and *Opinion of the
Justices*, 384 Mass. 828 (1981), submitted on November 5,
1981 (*Opinion of the Justices III*). In *Opinion of the Jus-
tices I, supra*, the Justices stated that "the expression 'items
or parts of items' refers to separable fiscal units. They [items
or parts of items] are appropriations of sums of money.
Power is conferred upon the Governor to reduce a sum of
money appropriated, or to disapprove the appropriation en-
tirely. No power is conferred to change the terms of an ap-
propriation except by reducing the amount thereof. Words or
phrases are not 'items or parts of items.' " *Id.* at 620-621.
The Justices concluded that the power granted by art. 63 did
not encompass the removal of restrictions imposed on the use
of the money appropriated. *Id.* at 621.

In *Opinion of the Justices II, supra*, the Justices consid-
ered the Governor's veto power with respect to so-called
"outside sections" of a general appropriation bill. Outside
sections do not appropriate money. The Justices concluded
that "for purposes of his veto power under § 5, the Governor
may treat as an 'item' any separable provision attached to
[a] general appropriation bill," *id.* at 825, even though that
provision does not appropriate money and therefore is not lit-
erally a line item. *Id.* at 822. Otherwise, the Justices rea-
soned, "general legislation included in a general appropria-
tion bill would be rendered substantially veto-proof." *Id.* at
825. The Justices did not define the term, "separable provi-
sion," although they certainly implied, if they did not ex-
pressly state, that any outside section in its entirety is a sepa-
rable provision and may be disapproved by the Governor.

In *Attorney Gen., supra*, the Attorney General sought an
order declaring that the Administrative Justice of the Boston
Municipal Court was not also the Administrative Justice of
the Housing Court. *Id.* at 511-512. The Legislature had ap-
proved "provisions in certain line items [appropriations of

money] of the fiscal year 1982 general appropriation bill (St. 1981, c. 351) designating the Administrative Justice of the Boston Municipal Court Department as the Administrative Justice of the Housing Court Department" and the Governor had disapproved those provisions. *Id.* at 512. The court held that the Governor's veto power identified in *Opinion of the Justices II* is not limited to a separable provision in the form of an outside section of a general appropriation bill, but applies also to a separable provision appearing as part of a line item. *Id.* at 515. "However," the court emphasized, "if the provision is a restriction or condition imposed by the Legislature on the appropriation in the item, the Governor may not disapprove the provision alone; he may only approve the entire item (with the restriction or condition), or disapprove or reduce the entire item (with the restriction or condition). . . . Thus . . . where a provision of an appropriation bill does not direct the way an appropriation is to be used or qualify the appropriation, the provision is separable and susceptible to an item veto. Stated another way: to determine whether the provisions were validly disapproved by the Governor, [the court] must consider whether their deletion altered the purposes of the appropriations or eliminated valid restrictions or conditions." (Citations omitted.) *Id.* at 515-516. The court in *Attorney Gen., supra*, reasoned that the disapproved provisions neither "affect[ed] the object of the Legislature to provide funds for the operation of [the Boston Municipal and Housing Courts]," nor did they "constitute restrictions or conditions on the expenditure of funds," *id.* at 516, and therefore they were "separable provisions which the Governor properly treated as separate items and disapproved under § 5 of art. 63 of the Amendments to the Massachusetts Constitution." *Id.* at 518.

In *Opinion of the Justices III*, the House of Representatives propounded six questions. The first three related to the same subject matter as the court dealt with in *Attorney Gen., supra*. Consistent with the court's holding in *Attorney Gen.,* the Justices advised that the Governor had properly treated provisions stating that the Administrative Justice of the Bos-

ton Municipal Court should be the Administrative Justice of the Housing Court as separable from items in an appropriation bill appropriating funds for salaries and expenses of the Boston Municipal Court, and had properly disapproved those provisions. *Id.* at 832. Questions 4 and 5 inquired about the Governor's authority to disapprove certain language in appropriation items for the fiscal affairs division of the Department of Revenue. Reasoning that the language struck by the Governor neither directed the manner in which the appropriated funds were to be used nor imposed restrictions or conditions on their expenditures, the Justices concluded that the struck language constituted separable provisions and the language was properly disapproved. *Id.* at 832-836.

The sixth question in *Opinion of the Justices III* yielded a different answer. The question was whether the Governor had authority to disapprove certain language in an item appropriating funds for the Department of Social Services. The language in question directed the Department to spend no less than the sums that had been spent for day care programs in fiscal year 1981 and no less than $1,000,000 on emergency services to battered women. The Justices answered that "[t]he deleted provisions reflect an intent by the Legislature to allocate appropriations for particular programs; contracted, center-based day care, family day care, and emergency services to battered women. . . . Deletion of the provisions directly affects the legislative purpose to provide a certain level of funding for these programs. A principle of great importance in our tripartite form of government is 'that it is for the Legislature, and not the executive branch, to determine finally which social objectives or programs are worthy of pursuit.' *Opinion of the Justices*, 375 Mass. 827, 833 (1978). The elimination of the provisions which restrict the · use of the funds appropriated violates that fundamental precept. *Opinion of the Justices*, 294 Mass. 616, 621 (1936). The restrictions imposed by the struck provisions are inseparable parts of [the appropriation item], and, therefore, the Governor lacked authority under § 5 of art. 63 to disapprove them, but was limited to disapproving or reducing the entire

item. *Opinion of the Justices*, 294 Mass. 616 (1936)." *Opinion of the Justices III, supra* at 837-838.

Guided by the principles articulated in the three Opinions of the Justices and the court's decision in *Attorney Gen., supra*, we turn to the specific questions on which our opinion has been requested. At the outset, we find it necessary to comment on the form of many of the questions. Many of the questions ask whether the Governor is constitutionally authorized to disapprove certain language, and then characterize the challenged language as "constitut[ing] restrictions" or as "alter[ing] legislative purpose." For example, question 1 asks: "Is it constitutionally competent under the provisions of section 5 of Article LXIII of the Amendments to the Constitution for the Governor to disapprove in said item 9221-1000 certain words and phrases *which constitute restrictions imposed upon the use of said item* without disapproving the entire item" (emphasis added)? Question 2 is: "Is it constitutionally competent under the provisions of said section 5 of said Article LXIII for the Governor to disapprove in said item 9221-1000 certain words and phrases *and thereby alter the legislative purpose of said item* without disapproving the entire item" (emphasis added)? Of course, as we have seen, the Governor is without authority to disapprove language in an item that constitutes restrictions on the use of the item or that alters its legislative purpose without disapproving the entire item. But, we think that the House of Representatives would not have requested our opinion on questions to which, in its view, the answers are already obvious. Furthermore, the briefs that have been submitted, including the brief filed by counsel to the House of Representatives, devote considerable argument to whether language the House of Representatives has characterized as restrictive or as altering legislative purpose does indeed constitute a restriction imposed on the use of an item or does indeed alter the legislative purpose of said item. Therefore, in answering the questions presented, we disregard any conclusory characterizations.

Questions 1 and 2 concern the Governor's disapproval in item 9221-1000 of the bracketed language: "For the office of

the commissioner, including not more than two hundred and twenty-one positions [subject however to the condition that sections 270 to 273 inclusive of this act take effect pursuant to the provisions of this act. No funds authorized under this item shall be expended unless said sections are enacted into law pursuant to the provisions of this act. It is the intent of the General Court that the enactment of said sections operate as a condition to the expenditure of any funds authorized under this item] . . . . $7,044,355."

Line item 9221-1000 provides $7,044,355 for the office of the Commissioner of Banks (commissioner). The commissioner is the primary regulator of the Commonwealth's State-chartered cooperative banks, savings banks, trust companies, and credit unions. Outside § 270, to which reference is made in line item 9221-1000 and which the Governor vetoed, makes changes to the membership, operation and deposit insurance coverage of the Deposit Insurance Fund, which is operated by the Mutual Savings Central Fund, Inc. (Central Fund). St. 1932, c. 44, § 1. St. 1934, c. 43. The Central Fund is a private corporation and is regulated by the commissioner. Outside § 271, also referred to in line item 9221-1000, and which the Governor also vetoed, would have required certain assessments to have been treated as assets of the Deposit Insurance Fund. The changes and requirements that would have been compelled by §§ 270 and 271 were unrelated to the legislative purpose in appropriating $7,044,355 for the office of the Commissioner of Banks. Sections 270 and 271 were directed at the Central Fund, not the office of the Commissioner of Banks. They did not have impact on the legislative purpose, use, or amount of the appropriation, nor did they impose a condition or restriction directly related to the use of the appropriated funds. Therefore, the Governor's disapproval of the language in item 9221-1000, requiring that §§ 270-273 take effect, is constitutionally authorized.

The fact that line item 9221-1000 characterizes the disapproved language as a "condition" is not controlling. In *Opinion of the Justices III*, *supra*, an item appropriating funds for the Department of Revenue (department) contained lan-

guage, vetoed by the Governor, specifying that no money be allotted to the department unless certain specified provisions had been implemented. *Id.* at 834. In answering that the Governor had authority to disapprove the language at issue, the Justices looked to the purpose of the appropriation, that is, the administration of the department, and concluded that elimination of the provisions did not affect the purpose of providing funds for the department, nor did it affect how the money was to be spent. *Id.* at 836. The Justices recognized that the struck language was couched in conditional terms, but stated that "skillful drafting will not convert a separable piece of general legislation to a restriction or condition." *Id.* "[I]f through the appropriation process, the Legislature were able to compel the Governor either to accept general legislation or to risk forfeiture of appropriations for a department . . . the careful balance of powers struck in art. 63 would be destroyed, and the fundamental principle of separation of powers . . . would be substantially undermined." *Id.* at 832. See also *Attorney Gen.*, *supra* at 516 (deletion of provision making the Administrative Justice of the Boston Municipal Court the the Administrative Justice of the Housing Court did not alter the purpose of appropriating money for those courts).

Accordingly, we answer questions 1 and 2 in the affirmative, and therefore we need not answer question 3, which by its terms is contingent on a negative answer to question 1 or 2.

Questions 4 and 5 inquire about the Governor's disapproval of the bracketed language in item 2100-0001: "For the maintenance and operation of the department of environmental management's division of parks; provided, that monies appropriated herein shall not be available until October first, nineteen hundred and ninety-one; [provided further, that funds appropriated herein shall not be expended until sufficient revenue is present in the environmental management revolving fund to provide for expenses]; and provided further, that any reductions in revenue estimates contained in the department's quarterly financial report shall be com-

mensurately reduced, dollar for dollar, from this item of ap-
propriation . . . . . $8,200,000
"[Environmental Management Revolving Fund . . . .
100.0 % ]".

The bracketed words at the end of item 2100-0001 desig-
nate the source of the appropriated money. Unless so desig-
nated, the source is the general fund. Therefore, the source
of funds for the maintenance and operation of the Depart-
ment of Environmental Management's division of parks is
the environmental management revolving fund. Outside § 50
establishes that fund and provides for the development of
plans to ensure self-sufficiency of the parks based on receipts.
By disapproving the bracketed language, the Governor would
change the source of park funding from the environmental
management revolving fund to the general fund, thus elimi-
nating the requirement that the money be collected before
expenditure. This clearly would remove legislatively imposed
restrictions on the appropriation and would alter the legisla-
tive purpose. Therefore, such disapproval would be ineffec-
tive. Accordingly, we answer questions 4 and 5, "No."

Questions 6 and 7 are directed to the Governor's disap-
proval of language in item 2440-0012 which is very similar
to the language addressed by questions 4 and 5. Once again,
we set out the item in question, with the language disap-
proved by the Governor bracketed: "For the maintenance
and operation of the metropolitan district commission's divi-
sion of parks and recreation; provided, that one million eight
hundred thousand dollars be expended for the operations of
the commission's skating rinks; provided further, that monies
appropriated herein shall not be available for expenditure un-
til October first, nineteen hundred and ninety-one; [provided
further, that funds appropriated herein shall not be expended
until sufficient revenue is present in the metropolitan parks
revolving fund to provide for expenses;] and provided further,
that any reductions in revenue estimates contained in the de-
partment's quarterly financial report shall be commensu-
rately reduced, dollar for dollar, from this item of appropria-
tion. . . . . $1,500,000

"[Metropolitan Parks Revolving Fund. . . . . 100.0%]".

For the reasons we expressed in explaining our answers to questions 4 and 5, we answer questions 6 and 7 in the negative.

Having answered that the Governor was not constitutionally empowered to disapprove the language at issue in items 2100-0001 and 2440-0012, we come to question 8, which asks whether the Governor was authorized to disapprove § 50 without disapproving those items in their entirety. Section 50, which establishes both the environmental management revolving fund and the metropolitan parks revolving fund, is an outside section, which is separable and therefore was properly disapproved in its entirety. *Opinion of the Justices II, supra* at 825-826. We recognize that the disapproval of § 50 results in items 2100-0001 and 2440-0012 being rendered ineffective. But, the Governor cannot be deprived of his authority to veto a separable, outside, section on the ground that, by doing so, certain items are rendered ineffective. It is as though the Governor disapproved those items in their entirety, a result that would be constitutionally permissible. We answer question 8, "Yes."

Questions 9 and 10 inquire whether the Governor is empowered to disapprove the words, "including salaries and expenses for litigation," appearing in eleven separate line items appropriating money for as many district attorneys' offices for their victim and witness assistance programs as provided by G. L. c. 258B (1990 ed.). The line items were identical except that a different district attorney's office was named in each and the amounts of money appropriated to the various offices differed. For example, the full text of item 0340-0130, with brackets indicating the words disapproved by the Governor, is as follows: "For the victim and witness assistance program of the Suffolk District Attorney's office, in accordance with the provisions of chapter two hundred and fifty-eight B of the General Laws, [including salaries and expenses for litigation] . . . . . $536,478

"Victim and Witness Assistance Fund . . . . . 100.0%".

Article 63, § 5, provides that the Governor may disapprove or reduce items or parts of items in a general appropriation bill. The Governor may not increase items or parts of items. If the effect of the Governor's disapproval of the words, "including salaries and expenses for litigation," were to increase the appropriation for other purposes or to remove restraints or conditions imposed on the use of the appropriated money, or to redirect the appropriated money in such a way as to alter the legislative purpose of the item, the disapproval would be unauthorized. But, the Governor's disapproval produced none of those effects. With or without the disapproval, the office of the district attorney for the Suffolk district had $536,478 for maintenance of its victim and witness assistance program. Even if the contested language had not been disapproved, that office had that amount available to meet program expenses unrelated to salaries and expenses for litigation. The disapproval did not lift restraints on the use of appropriated money or make available money not otherwise available. Furthermore, since the $536,478 would be available to meet expenses other than salaries and expenses for litigation regardless of the Governor's action, the Governor's action did not redirect appropriated money contrary to the legislative objective. The critical point is that no part of the appropriated sum was specifically directed by the Legislature to be spent on salaries and expenses for litigation and consequently not on other victim and witness program needs. We answer questions 9 and 10 in the affirmative.

We turn to question 11. The Governor disapproved certain language in outside §§ 43 and 49. The question presented is whether the action is invalid because the Governor did not transmit reasons for his disapproval in timely fashion. Section 5 of art. 63 specifies: "As to each item disapproved or reduced he shall transmit to the house in which the bill originated his reason for such disapproval or reduction, and the procedure shall then be the same as in the case of a bill disapproved as a whole. In case he shall fail so to transmit his reasons for such disapproval or reduction within ten days after the bill shall have been presented to him, such items

shall have the force of law unless the general court by adjournment shall prevent such transmission, in which case they shall not be law." The Governor's message did not express a reason for his action in disapproving language in those sections which, for purposes of this analysis, are treated as items. See *Opinion of the Justices II, supra* at 825. The Governor states in his brief that his "message to the House of Representatives referenced his veto of wording in sections 43 and 49 without elaboration." However, the Governor indicates in his brief that he also prepared a document entitled "Fiscal Year 1992 General Appropriations Act Financial Impact of Veto and Refile Actions" and distributed it to various members of the House of Representatives and the Senate. We understand the phrase of § 5 "to the house in which it originated" to refer to that office responsible for receiving papers on behalf of that branch of the General Court. Although the preparation and distribution of the impact statement may have been informative and of assistance to those to whom it was made available, § 5 is intended to assure that the House of Representatives or the Senate, as a body, is officially put on timely notice by the Governor of his reasons so that the House or Senate may then exercise its authority. We conclude that, in order to provide the House of Representatives, as a body, with official notice of his reasons, and to document whether he did so within the constitutionally specified time period, the Governor should have transmitted his reason or reasons in timely fashion to the office to which he transmitted his message. We therefore answer question 11, "Yes." The Governor's action in disapproving certain words and phrases in §§ 43 and 49 was invalid.

The House of Representatives next asks, in question 12, whether the Governor, exercising his authority under art. 63, § 5, may disapprove any words and phrases within § 152, an outside section, without disapproving the section in its entirety. The Justices have previously only opined that the Governor may veto an entire outside section. See *Opinion of the Justices II, supra* at 825; *Attorney Gen., supra* at 515 ("We said [in *Opinion of the Justices II*] that the Governor had

the power under § 5 to disapprove any section of the general appropriation bill which was not an 'item or part of an item' "). The Justices have never said, nor has the court, that an outside section *is* an item. It has only been said that an outside section *may be treated* as an item thereby preventing outside sections from being veto-proof. *Opinion of the Justices II, supra* at 825-826.

There would be no justification, let alone necessity, for treating part of an outside section as an item or part of an item. While treating an entire outside section as an item results in its being as susceptible to veto as an act or resolve not attached to an appropriation bill, such acts or resolves cannot be vetoed in part. See Part II, c. 1, § 1, art. 2, of the Massachusetts Constitution. Therefore, if the Governor were to have veto power over portions of outside sections, his veto power over general legislation in outside sections would exceed his veto power in the normal course. The Justices have never been asked, and are not now being asked, for their opinion on whether general legislation properly may be attached as an outside section to an appropriation bill. Therefore, we refrain from discussing that matter, but we are of opinion that, assuming the propriety of outside sections, the Governor's veto power with respect to them ought not be greater than it would be if those sections had been separately enacted. Accordingly, we answer question 12 in the negative.

Questions 13, 14, and 15 are contingent on our answer to question 11 being in the negative. We gave an affirmative answer to question 11. Therefore, we need not answer questions 13-15.

Question 16 asks: "If the answer to question 12 is in the negative," can the Governor constitutionally disapprove specific words and phrases in outside § 152? The brief submitted by the House of Representatives advises us that we should deal with question 16 as though the word, "negative," in the question were the word, "affirmative." We have no occasion to do so, as our answer to question 16 follows from our negative answer to question 12. We therefore answer question 16 in the negative. If, as we have said in answer to

question 12, the Governor is not empowered to disapprove parts of an outside section without disapproving the whole section, it is not constitutionally competent for the Governor to disapprove certain words and phrases in § 152 without disapproving the whole section.

In summary, we answer:

Question 1, "Yes";
Question 2, "Yes";
Question 3, "Need not answer";
Question 4, "No";
Question 5, "No";
Question 6, "No";
Question 7, "No";
Question 8, "Yes";
Question 9, "Yes";
Question 10, "Yes";
Question 11, "Yes";
Question 12, "No";
Questions 13-15, "Need not answer";
Question 16, "No."

The foregoing answers and opinion are submitted by the Chief Justice and the Associate Justices, subscribing hereto on the fifth day of December, 1991.

PAUL J. LIACOS
HERBERT P. WILKINS
RUTH I. ABRAMS
JOSEPH R. NOLAN
NEIL L. LYNCH
FRANCIS P. O'CONNOR
JOHN M. GREANEY