The Honorable Kevin Smith State Senator 1609 Coker-Hampton Drive Stuttgart, AR 72160-5713
Dear Senator Smith:
This is in response to your request for an opinion regarding House Bill 2080 of the 83rd General Assembly, the appropriation bill for personal services and operating expenses for the Department of Finance and Administration — Office of Accounting. This bill appropriates funds for the Arkansas Administrative Statewide Information System (AASIS) for the 2001-2003 biennium. As you note, the Governor returned HB 2080 to the Speaker of the House of Representatives by letter dated April 17, 2001, informing the House that he has vetoed specific portions of the bill relating to the AASIS Project Policy Steering Committee ("Steering Committee"). Specifically, he has vetoed language in Section 6 that referenced the Steering Committee and Section 8 in its entirety. This latter section created the Committee and outlined its membership and its authority and responsibilities.
You have requested an opinion as to whether this was a valid exercise of the executive veto power.
RESPONSE
The absence of any helpful Arkansas case law with respect to the Governor's veto power over appropriation items prevents me from predicting with certainty the outcome of a challenge to the exercise of the power in this particular instance. The lack of a uniform approach in other jurisdictions contributes to the difficulty of anticipating the Arkansas courts' interpretation of the scope of the so-called item veto power. While the answer to your question is therefore by no means clear under current law, it is my opinion following a review of legal treatises and cases from other jurisdictions that the Governor's veto of these provisions in HB 2080 is subject to challenge. The veto is therefore constitutionally suspect, in my opinion. It should be recognized, however, that questions of this nature involving the line item veto in Arkansas ultimately remain to be decided by the courts. If the General Assembly opposes this veto, the only certain course of action is to override the veto.
The Governor's veto power over "items of appropriations" is traditionally described as the line item veto power. The Arkansas Constitution establishes the line item veto power as follows:
 The Governor shall have power to disapprove any item or items of any bill making appropriation of money, embracing distinct items; and the part or parts of the bill approved shall be the law, and the item or items of appropriations disapproved shall be void, unless repassed according to the rules and limitations prescribed for the passage of other bills over the executive veto.
Ark. Const. art. 6, § 17.
According to my review, this constitutional provision is typical of item veto provisions in other states. See Briffault, The Item Veto in StateCourts, 66 Temp. L. Rev. 1171 (1993). Under what appears to be the majority view, the use of the item or so-called "partial" veto is not limited to provisions which appropriate money, but also extends to separable provisions attached to appropriation bills. See Briffault,supra, and Koster, Executive Branch — Item Veto, 30 Rutgers L.J. 1523 (1999). See also Attorney Gen. v. Administrative Justice of the BostonMun. Court Dep't, 384 Mass. 511, 427 N.E.2d 735, 738 (1981). This approach reasonably follows, according to several courts that have considered the matter, from the fact that "otherwise the Legislature could, by placing general laws within appropriation bills, immunize them from veto." Opinion of the Justices to the Senate, 419 Mass. 1201,643 N.E.2d 1036, 1042 (1994). See also Colton v. Branstad, 372 N.W.2d 184
(Iowa 1985) and Henry v. Edwards, 346 So.2d 153, 157 (La. 1977). However, an important corollary attends this rule. The vetoed provision must be "separate and severable," and not a "condition on an appropriation." State v. Olson, 286 N.W.2d 262, 269 (N.D. 1979). The general view in this regard is that the governor cannot veto provisions in an appropriation which act as a qualification, condition, or restriction on the appropriation without also vetoing the entire appropriation itself. Id. As stated by the Massachusetts Supreme Judicial Court:
 [A]mong the States which, like Massachusetts, permit partial vetoes, our conclusion accords with what appears to be the majority view, viz.: that where a provision of an appropriation bill does not direct the way an appropriation is to be used or qualify the appropriation, the provision is separable and susceptible to an item veto. . . . Stated another way: to determine whether the provisions were validly disapproved by the Governor, we must consider whether their deletion altered the purposes of the appropriations or eliminated valid restrictions or conditions."
Attorney Gen. v. Administrative Justice, supra, 427 N.E.2d at 737
(footnote with citations omitted).
As pointed out in Masciocchi, The Item Veto Power In Washington,
64 Wash. L. Rev. 891, the rationale for what is termed this "narrow view" is that "removal of conditions and restrictions supplants the governor's intent with that of the legislature in violation of the separation of powers doctrine." Id. at 903.
It is my opinion that if faced with the question, the Arkansas Supreme Court would likely adhere to the above general approach to the executive's partial veto power. Like the state constitutions at issue in the above cases, the Arkansas Constitution does not prohibit the addition of substantive legislative provisions in an appropriation bill, as long as the provisions relate to one subject. See Arkansas Motor CarriersAss'n, Inc. v. Pritchett, 303 Ark. 620, 798 S.W.2d 918 (1990). As noted above, extending the executive veto to separable provisions of an appropriation bill has been viewed as necessary to prevent the legislature from immunizing such provisions from veto. If separable provisions could not be vetoed, the governor would be forced, in the words of the Louisiana Supreme Court, to "choose between approving unacceptable substantive legislation or vetoing `items' of expenditures essential to the operation of government." Henry v. Edwards, supra, 346 So.2d at 158. If that were the case, the court noted, "the legislature would be permitted to impair the constitutional responsibilities and functions of a co-equal branch of government in contravention of the separation of powers doctrine. . . ." Id.
Given the fact, as noted by the Arkansas Supreme Court, that our constitution contains "explicit separation of powers provisions which declare that one branch cannot exercise any power belonging to another branch[,] (Chaffin v. Ark. Game Fish Comm'n, 296 Ark. 431, 443,757 S.W.2d 950 (1988), citing Ark. Const. art. 4, 1 and 2), I believe our Court would similarly recognize the Governor's power to veto separate, substantive legislation. The corollary principle would, however, also likely stand, i.e., the Governor may not usurp constitutional powers conferred on the Legislature by striking proper restrictions or conditions placed on the appropriation without also vetoing the money item.
Unfortunately, identifying the dominant analytical framework for interpreting the line item veto does not illuminate a clear path to resolving your question. One legal commentator has observed that "there is often no easy way to determine whether a particular provision of [an appropriation] bill is itself a free-standing item and not an inseparable part of a larger item." 66 Temp. L. Rev., supra at 1174. I anticipate that our court, similar to the courts in many other jurisdictions that have addressed this legislative-executive conflict, would adopt an approach that seeks to reconcile the item veto with traditional separation of powers concerns. Id. at 1175 (suggesting that in defining the scope of "item," "state courts are frequently influenced by the federal model of the proper balance of power between the executive and legislative branches in the enactment of legislation. . . .") The absence of any case law, however, makes it impossible to identify with any certainty the applicable approach in Arkansas. The state item veto decisions "resist easy classification." Id. at 1184. It has been noted that "[c]ourts within a given state vary their approach to the item veto over time and in different contexts." Id.
The various general approaches are aptly set forth in 66 Temp. L. Rev. 1171, supra, and 30 Rutgers L.J. 1523, supra. While the exact approach by our court remains uncertain, it is my opinion that the Governor's exercise of the item veto in this particular instance is likely subject to challenge because of the impact of the vetoed provisions on the use of the appropriated funds. Section 8 of HB 2080 established the Steering Committee with the authority and responsibility to "adopt by majority vote the governing policies of the AASIS Project, its major implementation plans, and its budget and expenditure plans." (Emphasis added). The veto of Section 8 thus removed the requirement that the Project's budget and expenditure plans be approved by a committee outside the agency receiving the appropriated funds. This, in my view, may reasonably be interpreted as a proper condition or limitation on the expenditure of the appropriated funds. Cf. State v. Carruthers,107 N.M. 439, 759 P.2d 1380 (1988) (invalidating the governor's veto of a provision requiring that several state agencies approve an equipment purchase before appropriated funds may be used, determining that this is a proper condition precedent to the expenditure of appropriated funds); andHenry v. Edwards, supra (upholding the governor's veto of a provision which was "not directed to the expenditure of funds in a budgetary sense.") The approval requirement clearly qualifies or restricts the use of the funds appropriated under the bill. If the budget or expenditure plan is not approved, presumably revision will be necessary for subsequent submission to the Steering Committee. This impacts the way the appropriation is used. And my review indicates that there is support for the proposition that provisions which "direct the way an appropriation is to be used or qualify the appropriation" should not be viewed as separable and subject to an item veto. Attorney Gen. v. AdministrativeJustice, supra. See also Opinion of the Justices, 411 Mass. 1201,582 N.E.2d 504, 510 (1991) (asking whether the proviso "affect[s] the purpose of providing funds for the department" or "how the money was to be spent").
In the case of HB 2080, I believe it may reasonably be concluded that the Legislature has placed a limitation upon the spending of the appropriated funds. In my opinion, the Governor's veto of this limitation may be challenged as contrary to the line item veto power, which in such circumstances requires that the money item be disapproved as a whole.Compare Op. Att'y Gen. 97-100 (opining that the item veto did not extend to special language in an appropriation for the Department of Education which directed the allocation and distribution of appropriated funds for State Equalization Funding). The fact that the AASIS Project will be subject to the oversight of another council or committee (see Letter from Governor Mike Huckabee to State Representative Shane Broadway (April 17, 2001)) does not diminish the fact that the veto arguably distorts or frustrates the Legislature's intent to have spending oversight by the Steering Committee. The majority view in this regard is that:
 The Governor may not distort, frustrate or defeat the legislative purpose by a veto of proper legislative conditions, restrictions, limitations or contingencies placed upon an appropriation and permit the appropriation to stand. He would thereby create new law, and this power is vested in the Legislature and not the Governor.
Sego v. Kirkpatrick, 86 N.M. 359, 524 P.2d 975, 982 (1974).
It is therefore my opinion, in conclusion, that the Governor's veto of Section 8 of HB 2080, and language in Section 6 referencing the Steering Committee, is constitutionally suspect. As indicated above, however, the state of the law in Arkansas on this issue is uncertain. Sole reliance upon this advisory opinion may therefore be inadvisable. If the Legislature opposes the veto, a legislative override is the only certain course of action.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh