SHELLEY BARNES & others[1] *vs.* SECRETARY OF
ADMINISTRATION & others.[2]

Suffolk. January 7, 1992. - February 18, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, General Court, Governor, Appropriation of money,
Separation of powers. *General Court. Governor. Public Welfare.*

The Governor acted in accordance with his power under art. 63, § 5, of the
    Amendments to the Massachusetts Constitution in reducing the amount
    of the fiscal year 1992 appropriation for the Emergency Assistance
    (EA) program established by G. L. c. 18, § 2 (D). [825-828]
The Governor's express power under art. 63, § 5, of the Amendments to
    the Massachusetts Constitution controls over the more general provi-
    sions in art. 30 of the Declaration of Rights concerning the separation
    of governmental powers; thus the Governor could properly reduce the
    amount of an appropriation without regard to the probable impact on a
    public welfare program existing under previously enacted legislation.
    [828-829]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on November 21, 1991.

The case was reported by *O'Connor*, J.

*Steven Savner* (*S. Stephen Rosenfeld* with him) for the
plaintiffs.

---

[1] Coalition for Basic Human Needs, Massachusetts Coalition for the
Homeless, Massachusetts Shelter Providers Association, and Sojourner
House.

[2] The Comptroller and the Commissioner of Public Welfare. The
Governor is also named as a defendant, but, as the Attorney General's
brief correctly points out, the plaintiffs are not entitled to declaratory relief
against the Governor. See G. L. c. 231A, § 2; *Avery* v. *Commissioner of
the Dep't of Social Servs.*, 406 Mass. 1006, 1007 (1990); *Rice* v. *The
Governor*, 207 Mass. 577, 580 (1911). We order the Governor dismissed
as a party.

*Pierce O. Cray,* Assistant Attorney General, for the defendants.

GREANEY, J. The plaintiffs commenced this action in the Supreme Judicial Court for the county of Suffolk challenging the Governor's veto of more than one-half of the fiscal year 1992 appropriation for the Emergency Assistance (EA) program established by G. L. c. 18, § 2 (D) (1990 ed.). The plaintiffs sought a declaration pursuant to G. L. c. 231A (1990 ed.) that the veto exceeded the permissible limits of the Governor's power under art. 63, § 5, of the Amendments to the Massachusetts Constitution and violated the doctrine of separation of powers. The plaintiffs also sought an injunction to prevent the defendants from refusing to release the funds appropriated by the Legislature for the EA program. The parties prepared a statement of agreed facts and exhibits. A single justice of this court reserved and reported the case for determination. We conclude that the Governor's veto was lawful in all respects.

The background facts may be stated as follows. The EA program is embodied in G. L. c. 18, § 2 (D), and consists of two basic components. First, the program provides rent, mortgage, and utility arrearage benefits to eligible persons at risk of becoming homeless.[3] Second, the program provides temporary shelter and other emergency benefits for eligible homeless persons.[4] The program is a joint Federal and State

---

[3]This part of § 2 (D) provides as follows:

"The department [of public welfare] shall promulgate rules and regulations to establish the levels of benefits available under the program and to insure simplicity of administration in the best interest of needy recipients. Such benefits shall include, but not be limited to, the following:— (*a*) for the prevention of the loss of housing, the actual liability up to three times the monthly rental or mortgage liability; (*b*) for the prevention of utility shutoffs or for the resumption of utility services, up to three months of the actual service liabilities; (*c*) for the provision of home heating assistance, up to three months of the actual fuel liabilities.

"The department shall promulgate regulations which would authorize the department to make payments for a fourth month of rent, utility or fuel arrearages if the commissioner [certifies] in writing that the family would otherwise become homeless, or be without utilities or fuel."

[4]This part of § 2 (D) provides as follows:

program, and the State is reimbursed for fifty per cent of the costs of operating the program in compliance with Federal law.

In May, 1991, as part of his budget proposal for fiscal year 1992, the Governor proposed eliminating from the EA program the rent, mortgage, and utility arrearage benefits for persons at risk of becoming homeless. The Legislature ultimately rejected that proposal, left intact both components for the program as described above, and appropriated $39,595,475 for the program, providing, among other things, that "no advance payments shall be paid" in fiscal year 1992, and that "no funds shall be expended for costs not directly attributable to rent or mortgage liability, utilities, and shelter." St. 1991, c. 138, § 2, line item 4403-2100. When the budget was sent to the Governor, he vetoed $20,595,427 of the appropriation for the EA program, leaving a total appropriation of $19,000,048. The Governor did not disapprove of any of the language of the line item. In a message accompanying the veto, and in a separate document which he sent to the Legislature entitled "Fiscal Year 1992 General Appropriation Act, Financial Impact of Veto and Refile Actions," the Governor stated that the purpose of the veto was to achieve savings in the EA program by changing the program as he had previously proposed, and that he was refiling for legislative approval his previous proposal to eliminate the rent, mortgage, and utility arrearage benefits.

Since the beginning of fiscal year 1992, the Department of Public Welfare (department) has continued to pay benefits to eligible persons under both components of the EA program.[5]

---

"(*d*) for the prevention of homelessness, temporary shelter as necessary to alleviate homelessness when such family has no feasible alternative housing available, up to the maximum period subject to federal reimbursement; storage of furniture for up to thirty days; moving expenses of up to one hundred and fifty dollars; advance rent payments of one month's rent; and security deposit not to exceed one month's rent."

[5]In response to the fact that the appropriation for the EA program for fiscal year 1992 was some $23,000,000 less than the appropriation for the preceding fiscal year ($62,734,225 had been appropriated in fiscal year 1991), and in response to the Governor's veto of more than one-half of

It is estimated that the presently appropriated funds will run out sometime in February, 1992.[6] In fiscal year 1991, more than 12,000 families received rent or mortgage arrearage benefits (the average payment being $1,150 a family), and thousands more received utility and fuel arrearage benefits (the average payment being $300 a family). Also in fiscal year 1991, more than 2,750 homeless families received shelter benefits through the EA program (the average cost being $2,700 per family a month). According to affidavits submitted by the plaintiffs, a substantial number of families may become homeless without the arrearage benefits, either due to eviction or due to mortgage foreclosure, and, without the shelter and emergency service benefits for persons who already are homeless, the shelter providers will be forced either to close down or to curtail sharply the services they furnish. We turn now to the issues raised by the case.

1. The plaintiffs have not shown that the Governor's veto exceeded his constitutional power to reduce appropriations. Article 63, § 5, as amended by art. 90 of the Amendments to the Massachusetts Constitution, provides as follows:

> "The governor may disapprove or reduce items or parts of items in any bill appropriating money. So much of such bill as he approves shall upon his signing the same become law. As to each item disapproved or reduced, he shall transmit to the house in which the bill originated

---

what had been appropriated, the department adopted emergency regulations eliminating certain EA benefits. In *Berrios* v. *Department of Pub. Welfare, ante* 587 (1992), we concluded that the plaintiffs in that case had not demonstrated a basis for the entry of a preliminary injunction enjoining implementation or enforcement of the department's emergency regulations.

[6]Counsel for the plaintiffs has advised us that on January 7, 1992, the Governor filed with the House of Representatives a supplemental budget which requests appropriation of an additional $22,000,000 for the EA program, line item 4403-2100, "in order to maintain emergency shelter for homeless families; rent, mortgage and utility arrearage payments to prevent homelessness; and assessments to ensure that benefits are given to the most needy," all as more particularly set forth in § 2 of the proposed appropriations legislation.

his reason for such disapproval or reduction, and the procedure shall then be the same as in the case of a bill disapproved as a whole. In case he shall fail so to transmit his reasons for such disapproval or reduction within ten days after the bill shall have been presented to him, such items shall have the force of law unless the general court by adjournment shall prevent such transmission, in which case they shall not be law."

The first sentence of § 5 unequivocally provides that "[t]he governor may disapprove or reduce items or parts of items in any bill appropriating money." In construing this provision, we have consistently stated that "the expression 'items or parts of items' refers to separable fiscal units. They [items or parts of items] are appropriations of sums of money. Power is conferred upon the Governor to reduce a sum of money appropriated, or to disapprove the appropriation entirely. No power is conferred to change the terms of an appropriation except by reducing the amount thereof. Words or phrases are not 'items or parts of items.' " *Opinion of the Justices*, 294 Mass. 616, 620 (1936). See *Opinion of the Justices, post* 1201, 1206, 1213 (1991); *Opinion of the Justices*, 373 Mass. 911, 913 (1977). See also *Attorney Gen.* v. *Administrative Justice of the Boston Mun. Court Dep't of the Trial Court*, 384 Mass. 511, 514-515 (1981).

The Governor acted in accordance with the enumerated constitutional power in art. 63, § 5, "to reduce a sum of money appropriated," *Opinion of the Justices*, 294 Mass. at 620, when he disapproved $20,595,427 of the funds approved by the Legislature for the operation of the EA program. The Governor did not attempt to remove any restrictions or conditions on the appropriation by changing or deleting words or phrases, and he did not violate the principle that a Governor cannot make an affirmative "gubernatorial appropriation" by enlarging or expanding the potential use of the appropriation. See *Opinion of the Justices, post* at 1208-1209. His action, therefore, constituted a reduction in the funding for a social

program which did not alter the purposes established by the Legislature for which the funds could be spent.

Despite the statements pertaining to art. 63, § 5, set forth above, the plaintiffs argue that the Governor's authority thereunder is limited to three situations which their brief describes as follows: "(1) when he has properly vetoed a provision in the act and is using his power to reduce the appropriation corresponding to the disapproved provision; (2) when the appropriation is reduced to avoid wasteful or unnecessary spending without compromising or altering the Legislature's purpose in appropriating the funds; and (3) when the nature of the underlying act is permissive, not mandatory, such that the reduction in funds does not do violence to the substantive intent of the underlying legislation." Outside of these limits, the plaintiffs argue, the Governor cannot exercise his line item veto. The plaintiffs can cite no authority that construes the line item veto so narrowly, and, as has been noted, the plain language of art. 63, § 5, is not so restricted.

As a corollary argument, the plaintiffs also maintain that the Governor cannot make such a large cut in funding without also eliminating some of the language in the item mandating the benefits. Here, the plaintiffs argue, the Governor attempted to accomplish through "defunding" what he could not accomplish through the legislative process — the elimination of certain benefits provided as part of the EA program. The plaintiffs conclude that art. 63, § 5, does not authorize the Governor to reduce funding to produce such a result. Again, we disagree.

As we have discussed, the Governor's action decreasing the budget for the EA program is clearly within the power granted to a Governor under art. 63, § 5, as the language of that provision has been consistently construed. The plaintiffs are asking, in essence, that we look behind the substance of the Governor's action, to the effect his cut in appropriations has had on the EA program. From this effect, and from his message accompanying the veto, we are urged to determine his motives, which are, the plaintiffs assert, to eliminate from the program in an unlawful way certain benefits which the

Governor had unsuccessfully sought to eliminate. We have never inquired into a Governor's motives in the use of the line item veto power. The language of the constitutional amendment clearly authorizes the Governor's reduction; his action was wholly lawful, and our inquiry ends there.

2. As a second point, the plaintiffs argue that, by reducing funding for the EA program, the Governor has "effectively repealed" G. L. c. 18, § 2 (D), and that the Governor's veto constituted "legislative action" by the executive in violation of art. 30 of the Declaration of Rights of the Massachusetts Constitution.[7] This argument, somewhat redundant of what has been discussed already, also lacks merit.

Because the specific provisions of § 5 of art. 63 expressly authorize what the Governor did, the power conferred by § 5 necessarily controls over the more general provisions of art. 30. Cf. *Opinion of the Justices*, 302 Mass. 605, 621 (1939) (specific constitutional authority granted the Legislature to appoint and remove officers contained in Part II, c. 1, § 1, art. 4, and Part II, c. 1, § 2, art. 8, and § 3, art. 6, applies notwithstanding the separation of powers mandate in art. 30). While "it is for the Legislature . . . to determine finally which social objectives or programs are worthy of pursuit," *Opinion of the Justices*, 375 Mass. 827, 833 (1978), the Governor may properly use his veto power to accomplish legislative-type goals. *Id.* at 832.

The Governor's legislative-type powers are clearly apparent and available in the area of reducing appropriations. While, as has been noted, the Governor cannot engage in affirmative "gubernatorial appropriation," his negative power with respect to the reduction of appropriations is "coextensive" with the Legislature's. *Opinion of the Justices*, 384 Mass. 820, 825 (1981). Whatever the Legislature can do by failing to appropriate funds, the Governor can also do by reducing an appropriation under § 5 of art. 63.

---

[7]Article 30 provides in pertinent part that "[i]n the government of this Commonwealth . . . the executive shall never exercise the legislative and judicial powers, or either of them . . . ."

The annual appropriations process provided for by art. 63, § 5, may lawfully be used by the Governor, in circumstances like the present, despite its effect on previously enacted statutes. The Governor, therefore, could exercise his express reduction power without regard to any impact on G. L. c. 18, § 2 (D). See L. Tribe, American Constitutional Law § 4-13, at 267 (2d ed. 1988) (In a line item veto system, the executive is indeed "free not only to nullify new [legislative] spending initiatives and priorities, but [also] to wipe out previously enacted programs that receive their funding through the annual appropriations process"). There has been no violation of art. 30.[8]

3. A judgment is to be entered in the Supreme Judicial Court for the county of Suffolk dismissing the Governor as a party to the action and declaring that the power conferred by

---

[8]None of the cases cited by the plaintiffs to support their separation of powers argument is on point. The plaintiffs claim that this court has expressed concern over the separation of powers implications of "gubernatorial overreaching" in the use of line-item veto. However, the opinions cited by the plaintiffs all involve attempts by the Governor to veto language *restricting* the use of funds appropriated by the Legislature. See *Opinion of the Justices, post* at 1206; *Opinion of the Justices,* 384 Mass. 820, 822 (1981). In a situation in which the Governor attempts to delete restrictive language from a legislative appropriation, the concern is that he is expanding the scope of a program, a power not granted to him under art. 63, § 5. By way of contrast, this case involves the classic use of the line item veto power, a reduction in the amount of the item.

The plaintiffs also cite two cases from other jurisdictions in support of their argument that the Governor's action here violates separation of powers principles. *Fitzsimmons* v. *Leon,* 141 F.2d 886 (1st Cir. 1944). *State ex rel. Steele* v. *Kopp,* 172 W. Va. 329 (1983). These cases are unhelpful. First, we have previously stated, when directed to the law of other jurisdictions, that we prefer, "to rely on, and to be guided by, art. 63's history and language," when confronted with an issue concerning the meaning or application of that article. *Attorney Gen.* v. *Administrative Justice of the Boston Mun. Court Dep't of the Trial Court,* 384 Mass. 511, 515 n.3 (1981). See *Opinion of the Justices,* 384 Mass. at 827. In addition, the rationale in the cases cited by the plaintiffs has been criticized by other courts. See, e.g., *Thirteenth Guam Legislature* v. *Bordallo,* 430 F. Supp. 405 (D. Guam 1977), aff'd, 588 F.2d 265 (9th Cir. 1978). Thus, the plaintiffs present no authority for subjecting the Governor's use of the line item veto power specifically granted by art. 63, § 5, to scrutiny under the general separation of powers doctrine set forth in art. 30.

art. 63, § 5, to reduce an item in a bill appropriating money, was lawfully exercised by the Governor to reduce the appropriation for the EA program established by G. L. c. 18, § 2 (D) (St. 1991, c. 138, § 2, line item 4403-2100) by $20,595,427.

*So ordered.*